BRYNIARSKI, ET AL. *v.* MONTGOMERY COUNTY
BOARD OF APPEALS, ET AL.

[No. 401, September Term, 1966.]

138

*Decided June 8, 1967.*

The cause was argued before HAMMOND, C. J., and HOR-
NEY, MARBURY, BARNES, McWILLIAMS and FINAN, JJ.

*William F. Hickey* for appellants.

*John J. Delaney,* with whom were *Linowes & Blocher, R.
Robert Linowes* and *Joseph P. Blocher* on the brief, for Hillan-
dale Medical Corporation, one of the appellees; no brief filed
for Montgomery County Board of Appeals, other appellee.

BARNES, J., delivered the opinion of the Court.

This zoning appeal involves the granting by the Montgomery
County Board of Appeals (the Board) of the application of the
Hillandale Medical Corporation for special exceptions to per-
mit the construction and operation of an apartment hotel on
1.7697 acres of land zoned C-O (commercial-office), and for
off-street parking, in conjunction with the apartment hotel use,
on 4.1260 acres of adjoining land zoned R-90 (single-family
residential). The tract is located on the north side of Elton
Road, Silver Spring. There are two principal questions pre-
sented: (1) whether the appellants or some of them as protest-

ing property owners have standing to appeal as parties "aggrieved", and (2) whether there was a denial of due process of law to the appellants by the refusal of the Board to permit cross-examination of the applicant's witnesses at the hearing before the Board.

West of the subject property is land zoned I-1 (light industrial), developed by the large distribution plant of the Coca Cola Bottling Company for the Montgomery County area. Still farther to the west, adjoining the Coca Cola property, is the Hillandale Shopping Center, erected on land zoned C-1 (local commercial). To the south of the subject property, across Elton Road, is land zoned C-1 on which there is an abandoned dairy building, and beyond this property is the interchange of the Capital Beltway and New Hampshire Avenue. The eastern boundary of the subject property is abutted by a community swimming pool, a vacant parcel and one single-family residence. Farther to the east are additional single-family residences along Elton Road. To the north of the subject property, abutting the R-90 land to be used for off-street parking, is additional R-90 land, upon which several single-family residences are erected, including one fronting on Green Forest Drive, owned by Albert Bryniarski, Jr., one of the appellants. To the southeast of the subject property on Elton Road there are single-family dwellings, one of which, 1771 Elton Road, is owned by Lt. Col. Richards O. Stewart, one of the appellants. The property 1779 Elton Road is owned by Sheldon J. Siegel, one of the appellants, who wrote a letter, dated May 11, 1965, to the Board protesting the granting of the application and stating the reasons for his opposition. This letter appears as Exhibit 12 in the proceedings before the Board.

At the hearing before the Board on May 13, 1965, John M. Lothschuetz, counsel for the Hillandale Citizens Association and for the "property owners immediately adjoining" the subject property, requested a continuance so that his clients could employ local counsel and obtain expert witnesses to testify for them. This request was denied by the Board.

The applicant produced six witnesses to testify for it. The architect, Theodore R. Cromar, Jr., had prepared the site plan and other exhibits. He testified fully in regard to the proposed

apartment hotel and off-street parking and stated that they complied with the requirements of the Hillandale Master Plan. At the conclusion of Mr. Cromar's testimony, the chairman asked counsel for the applicant to call his next witness and the following occurred:

"Mr. Lothschuetz: Do you [I] have an opportunity for the opposition to cross examine him in any way?

"Chairman Noyes: Let me see. You are representing whom?

"Mr. Lothschuetz: The Hillandale Citizens Association, sir.

"Chairman Noyes: What is your name?

"Mr. Lothschuetz: My name is Lothschuetz.

"Chairman Noyes: You say you are representing the Hillandale Citizens Association?

"Mr. Lothschuetz: Yes, and property owners immediately adjoining the land.

* * *

"Chairman Noyes: What I am trying to drive at, the citizens association does not have standing to sue in court.

"Mr. Lothschuetz: Mr. Chairman, I do have specific authorization from the property owners who adjoin this proposed apartment hotel to represent them in this matter. If I cannot cross examine, Mr. Chairman, I want to note an exception for the record.

"Chairman Noyes: Go ahead. You may call any witnesses you like after the petitioner finishes his case.

"Mr. Lothschuetz: You have no opportunity at all to cross examine?

"Chairman Noyes: I might say, to clarify, the Board adopted new rules. All five Members concurred. They are to be submitted to the County Council for approval. Our procedure would be the same as the County Council, eliminating cross examination. These things drag on and on. You call anybody you want when he finishes.

"Mr. Lothschuetz: When were the rules submitted to the County Council?

"Chairman Noyes: I don't know.

"Mr. Lothschuetz: Will the County Council have to approve these rules?

"Chairman Noyes: Yes. Until they are approved, we are operating under those rules. The rules don't say anything about cross examination. This is something that cropped up over the years and we are trying to conform to the same procedure as the County Council."

After being advised that there had been a death in Mr. Cromar's family, and he did not wish to remain until the end of the applicant's case to be called by Mr. Lothschuetz as his witness, Mr. Lothschuetz consented to call him as his witness at that time rather than later and asked Mr. Cromar a few questions.

Thereafter, the applicant produced a professional engineer and land surveyor, a real estate broker and appraiser, a land planner and traffic engineer, a real estate consultant, and Fred G. Williams, the then owner of the property. At the conclusion of the testimony of Mr. Williams, Mr. Lothschuetz proceeded to examine him as his witness.

The testimony of the witnesses for the applicant was full and indicated that the proposal complied with the applicable zoning laws in various regards, that the special exceptions were desirable and should be granted and that there would be no traffic hazard and no depreciation in the value of neighboring properties resulting from the granting of the application.

Counsel for the protestants then produced five witnesses, Col. Frederick F. Vreeland, 10509 Sweetbriar Parkway (not an appellant), Albert F. Bryniarski, Jr., 10210 Green Forest Drive (an appellant), Lt. Col. Richards O. Stewart, 1771 Elton Road (an appellant), Mrs. William Zeigler, 1817 Elton Road (not an appellant) and Albert Jack Oakes, 1819 Elton Road (not an appellant). Mr. Lothschuetz, 2006 Edgewater Parkway, counsel for the protestants, also presented testimony. He is an appellant. These witnesses gave their reasons for their opposi-

tion including hazards from traffic, depreciation to the value of their properties and other injuries which would result, in their opinion, from the granting of the application. As already indicated, the Board accepted the letter of May 11, 1965, from Sheldon J. Seigel, 1779 Elton Road, and filed it as an exhibit in the case.

The Board, on June 2, 1965, filed a carefully considered opinion finding that the applicant had met the burden of proof in establishing that its proposal met the requirements of section 104-27(3)(b), Montgomery County Code (1960), and passed an order granting the application for the special exceptions. A timely appeal was taken from this order to the Circuit Court for Montgomery County by Albert F. Bryniarski, Jr., Richards O. Stewart, Sheldon Seigel, Herbert M. Avram, Dr. Francis N. Waldrop, Samuel H. Murray, and John M. Lothschuetz.

In the petition for appeal, the petitioners were described as "owners of property immediately contiguous or in close proximity of the proposed site for the apartment hotel" and a vicinity plat was attached showing the location of their properties with reference to the location of the subject property. The petition further recited that the petitioners, as contiguous owners or owners in close proximity, were "eligible to bring this petition as aggrieved parties according to the principles of law laid down by the Maryland Court of Appeals." The petition alleged error in regard to the failure to grant the continuance, prejudice and bias on the part of the Board against the protestants at the hearing, the denial of the right of cross-examination, and various challenges to the granting of the special exceptions on the merits which allegedly "aggrieved especially the petitioners herein as to traffic, noise and quiet enjoyment."

Judge Moorman, affirming the action of the Board, decided that the petitioners were not parties aggrieved, that the Board did not abuse its discretion in denying the continuance, that the hearing was fairly and impartially held, and that although cross-examination should have been permitted, there was no prejudice to the petitioners because they either called the applicant's witnesses as their own witnesses and examined them or had the opportunity to make them their witnesses and did not do this.

The same questions raised in the petition for appeal to the Circuit Court for Montgomery County were raised, briefed and argued before us, but we find it necessary to consider only the questions of the status of the appellants to appeal and of the denial of due process of law by the refusal of the right of cross-examination.

We have concluded that the lower court was in error in his rulings on both of the questions mentioned and a reversal and a remand to the Board for a new hearing are required.

### 1. Status of the appellants to appeal.

Under the applicable statutory law, two conditions precedent must be met before a person has standing to appeal to the Circuit Court for Montgomery County from a decision of the Board: (1) he must have been a *party to the proceeding before the Board,* and (2) he must be *aggrieved by the decision of the Board.*

In the present case, three of the appellants were parties at the hearing before the Board. They are the appellants Bryniarski and Stewart who testified before the Board and the appellant Seigel, who by filing a letter which was accepted and filed by the Board as part of the record in the case, became a party, as we recently held in *Hertelendy v. Montgomery County Board of Appeals,* 245 Md. 554, 226 A. 2d 672 (1967), subsequent to the decision of the lower court in the case at bar.

The question then arises as to whether these three appellants were *aggrieved* by the decision of the Board.

The requirement that a person must be "aggrieved" in order to appeal to the Board and from the Board to a court of record was originally included in the Standard State Zoning Enabling Statute and generally appears in State Zoning Enabling Acts and in municipal zoning ordinances throughout the United States. See 2 Rathkopf, *The Law of Zoning and Planning,* sections 63-14 to 63-15 (3d ed.) and particularly note 3. This requirement is contained in the Maryland Zoning Enabling Act, Code (1957), Article 66 B, sections 7 (d) and 7 (j). The term "person aggrieved" generally appears in the municipal zoning ordinances, including, as we have indicated, the Montgomery County Zoning Ordinance. There have been many cases in

Maryland and in other states considering the meaning of "a person aggrieved," but, apparently, the word "aggrieved" has never been legislatively defined.

Generally speaking, the decisions indicate that a person aggrieved by the decision of a board of zoning appeals is one whose personal or property rights are adversely affected by the decision of the board. The decision must not only affect a matter in which the protestant has a specific interest or property right but his interest therein must be such that he is personally and specially affected in a way different from that suffered by the public generally. *DuBay v. Crane,* 240 Md. 180, 185, 213 A. 2d 487 (1965). The circumstances under which this occurs have been determined by the courts on a case by case basis, and the decision in each case rests upon the facts and circumstances of the particular case under review. Certain principles, however, have evolved. They are as follows:

1. There is a distinction between the degree of certainty of allegations and proof of aggrievement in cases in equity and in cases involving a petition for a writ of mandamus on one hand, and in statutory appeals from the board to the original court of record on the other.

(a) When the suit is in equity and a declaration nullifying a zoning ordinance for constitutional or other reasons is sought, the allegations by the plaintiff of how he is specially damaged by the zoning ordinance must be definite, and he must meet the burden of showing such special damage by competent evidence. *Richmark Realty Co., Inc. v. Whittlif,* 226 Md. 273, 282, 173 A. 2d 196 (1961); *Loughborough v. Rivermass,* 213 Md. 239, 131 A. 2d 461 (1957); *Cassell v. Mayor & C. C. of Baltimore,* 195 Md. 348, 73 A. 2d 486 (1950); *Bauernschmidt v. Standard Oil Co.,* 153 Md. 647, 139 Atl. 531 (1927).

(b) In a mandamus action the same rule is applicable. *Lawler v. Bart Realty Corp.,* 241 Md. 405, 216 A. 2d 729 (1966).

2. In cases involving appeals under the provisions of a zoning ordinance:

(a) It is sufficient if the facts constituting aggrievement appear in the petition for appeal either by express allegation or by necessary implication. *Town of Somerset v. Montgomery County Board of Appeals,* 245 Md. 52, 225 A. 2d 294 (1966).

(b) An adjoining, confronting or nearby property owner is deemed, *prima facie,* to be specially damaged and, therefore, a person aggrieved. The person challenging the fact of aggrievement has the burden of denying such damage in his answer to the petition for appeal and of coming forward with evidence to establish that the petitioner is not, in fact, aggrieved. Thus, in *Chatham Corp. v. Beltram,* 243 Md. 138, 147, 220 A. 2d 589 (1966), the party seeking rezoning offered expert testimony that there would be no diminution in value of adjoining houses —one of which was owned by the protestant—if the rezoning came about. The trial court found, on conflicting evidence, that the protestant was a person aggrieved, and we held there was no error in that ruling.

(c) A person whose property is far removed from the subject property ordinarily will not be considered a person aggrieved. *Wilkinson v. Atkinson,* 242 Md. 231, 218 A. 2d 503 (1966) ; *DuBay v. Crane, supra; City of Greenbelt v. Jaeger,* 237 Md. 456, 206 A. 2d 694 (1965) ; *Marcus v. Montgomery County Council,* 235 Md. 535, 201 A. 2d 777 (1964) ; *Pattison v. Corby,* 226 Md. 97, 172 A. 2d 490 (1961). But he will be considered a person aggrieved if he meets the burden of alleging and proving by competent evidence—either before the board or in the court on appeal if his standing is challenged—the fact that his personal or property rights are specially and adversely affected by the board's action.

3. A person whose sole reason for objecting to the board's action is to prevent competition with his established business is not a person aggrieved. *Kreatchman v. Ramsburg,* 224 Md. 209, 167 A. 2d 345 (1961).

4. If any appellant is a person aggrieved, the court will entertain the appeal even if other appellants are not persons aggrieved. See *e.g., Marcus v. Montgomery County Council, supra.*

5. The status of a person to appeal as a "person aggrieved" is to be distinguished from the result on the merits of the case itself. In determining status to appeal, the question is whether the property owner may reasonably be thought to be specially damaged if the application is approved. Testimony may be taken on the point by the trial court. *Town of Somerset v. Montgom-*

*ery County Board of Appeals, supra.* If, on the merits, the board acted properly in approving the application, the protesting property owner is not damaged *in law,* however much he may be damaged *in fact.* His damage is then *damnum absque injuria.* Because the result on the merits might be adverse, however, does not mean that the protestant would not have status to challenge the board's action. As Judge Oppenheimer stated, for the Court, in *Town of Somerset*:

> "When the issue of the standing of an appellant to appeal is raised in the court in which review of the administrative action is asked, we have approved the practice of trial judges in permitting testimony on the point to be taken before them. * * * The question is not one of taking additional testimony on the merits of the substantive issues decided by the Board * * *, but of determining whether the appellants have the requisite standing to have those issues reviewed." (245 Md. at 63, 225 A. 2d at 301).

A most helpful and well considered note on the general subject of "a person aggrieved" appears at 8 W. & M. L. Rev. 295 (1967). See also an interesting and provocative article by Professor Jan Z. Krasnowiecki, *Planned Unit Development: A Challenge to Established Theory and Practice of Land Use Control,* 114 U. Pa. L. Rev. 47, 55-63 (1966).

Applying these principles to the present case, it seems clear to us that the appellants Bryniarski, Stewart and Seigel were persons aggrieved and entitled to maintain the appeal from the Board to the Circuit Court for Montgomery County and, *a fortiori* to maintain the appeal from the Circuit Court to this Court.

In the petition for appeal, they are described as "owners of property immediately contiguous or in close proximity" [1] to the

---

1. Almost identical language, i.e., "either adjoins or is in close proximity to" the rezoned property was held to be sufficient, with an allegation of depreciation in the value of the properties of the protestants, in a *bill in equity* on the demurrer of the successful applicant in Crozier v. Co. Comm'rs of Prince George's County, 202 Md. 501, 97 A. 2d 296 (1953).

subject property. This fact appears from the attached vicinity map. It also appears from Exhibit 2 before the Board which is a "List of Adjoining and Confronting Property Owners" required by the Montgomery County Zoning Ordinance to be given notice of the pending proceeding and of the Board's action in that proceeding. See sec. 111-31 of the Montgomery County Code (1965). The three petitioners mentioned are listed by name, their addresses are given and they received the required notice. It is obvious that this notice is required by the ordinance to give persons likely to be aggrieved, notice of a proceeding which will likely have an adverse effect upon their property. It is a statutory recognition that the adjoining and confronting property owners are, *prima facie,* "persons aggrieved" and proper parties before the Board.

As we have indicated, the petition for appeal also alleges that these petitioners "are eligible to bring this petition as aggrieved parties according to the principles of law laid down by the Maryland Court of Appeals." This allegation is even more definite in alleging "aggrievement" than was the allegation sustained by us in *Town of Somerset v. Montgomery County Board of Appeals, supra,* and is legally sufficient to allege the necessary elements of aggrievement, including special damage. In the petition in this case, moreover, there is the further allegation that the alleged unlawful granting of the special exceptions "aggrieved especially the petitioners herein as to traffic, noise and quiet enjoyment." This was a sufficient allegation of special damage. Although the appellees denied these allegations in their answers to the petition for appeal, they did not go forward at the hearing before the Circuit Court to introduce evidence to rebut the presumption of fact that the petitioners were "persons aggrieved." The presumption, therefore, was effective and the petitioners were established as "persons aggrieved."

Moreover, in evidence before the Board, there was testimony sufficient to establish that the petitioners Bryniarski, Stewart and Seigel would, in fact, probably be aggrieved by the granting of the proposed special exceptions. Mr. Bryniarski, who pointed out the location of his property on the aerial map and stated that he received the necessary notice, testified in regard

to the alleged adverse effect of additional traffic which would be generated by the proposed apartment hotel as contrasted with the expected traffic to be generated from the operation of a medical office building; and, the alleged adverse effect of the proposal upon the general plan for the physical development of the District. Col. Stewart gave general testimony to the same effect and pointed out that his property would probably be more adversely affected than any other property, particularly because of the height of the proposed building. Mr. Seigel's letter of May 11, 1965, expressed his belief that his property would be injured by the increase in traffic and the change in the nature of the use of land in the area. In our opinion, apart from the presumption, there was sufficient evidence in the record before the Board to establish, *prima facie,* that the petitioners mentioned were persons aggrieved.

## 2. Denial of due process by refusal of the right to cross-examine

As we have indicated, Judge Moorman recognized that the denial of the right of cross-examination to the protestants would be a denial of due process of law if the protestants had not waived the right or had failed to suffer prejudice from the denial of that right by proceeding to call the applicant's witnesses as their witnesses and to examine them as such. The lower court relied on the decision of this Court in *Hyson v. Montgomery County Council,* 242 Md. 55, 217 A. 2d 578 (1966) and was of the opinion that our holding as to waiver of the right of cross-examination in that case was applicable to the present case. We do not agree. In *Hyson,* counsel for the protestants did not request the right to cross-examine the applicant's witnesses at the conclusion of their testimony, took no exception and only requested the right to cross-examine the applicant's witnesses at the beginning of the protestants' case. Counsel for the protestants was advised "It hasn't been the practice," whereupon counsel for the protestants proceeded to put on their case. We held that the right to cross-examine had been waived.

In our opinion, this aspect of the present case is controlled by our recent decision on December 16, 1966 (approximately

five months after Judge Moorman's opinion was filed in the present case on July 27, 1966) in *Town of Somerset v. Montgomery County Board of Appeals, supra*. In *Town of Somerset*, as in the case at bar, counsel for the protestants made a timely objection to the denial of the right to cross-examine the witness for the applicants. We held that this sufficiently preserved the question on appeal. We held further that the calling of the witness for the applicants as the witness for the protestants and examining him, was not equivalent to cross-examination so that there was prejudice to the protestants resulting from the denial by the Board of the right to cross-examine.

As Judge Oppenheimer, for the Court, aptly stated in *Town of Somerset*:

> "In the argument before us, counsel for the appellees properly conceded that, under our decisions, the proceedings before the Board were adversary in nature, but they contend that the Board's procedure in allowing the appellants to call the applicants' experts and to examine them as hostile witnesses was the substantial equivalent of the right of cross-examination. We disagree.
>
> "In the words of Mr. Justice Lamar, in *Interstate Commerce Comm'n v. Louisville & N. R. R. Co.*, 227 U. S. 88, 93 (1913): '[T]he more liberal the practice * * * the more imperative the obligation to preserve the essential rules of evidence by which rights are asserted or defended * * * All parties must be fully apprised of the evidence submitted or to be considered, and must be given the opportunity to cross-examine witnesses * * * In no other way can a party maintain its rights or make its defense.' The right of a party to call hostile witnesses as its own after the testimony of the adverse party has been completed, in our opinion, is not the substantial equivalent of the right to cross-examine immediately after the direct testimony of the witness had been concluded. The techniques of advocacy so essential to our system of justice are largely stultified when resort must be had to

such a cumbersome and delayed substitute for immediate and direct cross-examination." (245 Md. at 65-66, 225 A. 2d 302-03).

As we have concluded that at least three of the appellants were persons aggrieved and, as such, had status to maintain the appeal from the Board to the Circuit Court and from the Circuit Court to us, and further that there was a prejudicial denial of due process of law by the Board's refusal to permit cross-examination of the applicant's witnesses, we will reverse the order of the lower court, remand the case to that court with instructions to remand the case to the Board for a new hearing in which the right of cross-examination will be afforded.

We do not find it necessary to express any opinion on the other questions raised by the appellants.

> *Order of the Circuit Court for Montgomery County, dated July 27, 1966, dismissing the appellants' petition, reversed and case remanded to the Circuit Court for Montgomery County for remand to the Board of Appeals for a new hearing in accordance with this opinion, costs to be paid by Montgomery County.*