581 A.2d 60

**MARYLAND WASTE COALITION, INC.**

v.

**MARYLAND DEPARTMENT OF the ENVIRONMENT, et al.**

**No. 1829, Sept. Term, 1989.**

Court of Special Appeals of Maryland.

Oct. 31, 1990.

G. Macy Nelson (James S. Aist and Anderson, Coe & King, on the brief), Baltimore, for appellant.

Jeffrey E. Howard, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for appellee Md. Dept. of Environment.

Jervis S. Finney (Kevin A. Dunne, George W. Kelly and Ober, Kaler, Grimes & Shriver, on the brief), Baltimore, for appellee Medical Waste Associates, Inc.

Argued before WILNER, ROSALYN B. BELL and ROBERT M. BELL, JJ.

ROSALYN B. BELL, Judge.

This case arises from a decision of one of the appellees, the Maryland Department of the Environment (Department), to issue two permits to appellee, Medical Waste Associates, Inc. (Associates), to construct and operate an infectious medical waste incinerator in the Hawkins Point area of Baltimore City. Appellant, Maryland Waste Coali-

tion, Inc. (Coalition), an environmental organization, whose stated purpose is to protect Maryland's environment, appealed that decision to the Circuit Court for Baltimore City. The Coalition filed two separate actions. On September 18, 1989, the Coalition filed an appeal under Md.Envt.Code Ann. § 9–263 (1982, 1987 Repl.Vol.), which provides for judicial review of an "order, rule or regulation." In addition, the Coalition filed an appeal under Rule B2, which provides for appeals, in the form of an application for a review, from "any final action of an administrative agency...." Rule B1. The circuit court granted the Associates' Motion to Consolidate the two appeals on October 11, 1989. On October 23, 1989, the circuit court granted the Associates' Motion to Intervene in the B–Rule appeal and granted both the Associates' and the Department's Motions to Dismiss.

In the interest of completeness, we observe that the transcript of the proceedings of October 23, 1989 indicates that the case was dismissed for lack of subject matter jurisdiction. The trial judge, however, suggested his ruling was also based on his view that the Coalition lacked standing:

"THE COURT: Counsel, there is one order entitled Order Dismissing Case and it reads as follows: After consideration of the arguments of counsel it is hereby ordered that this case be dismissed because the Court finds that the appeal is not authorized by law and the Court lacks jurisdiction over the subject matter of the case.

\* \* \* \* \* \*

"The other order is in the other case which reads as follows: After consideration of the arguments of counsel it is hereby ordered that this case be dismissed because the Court finds that it lacks jurisdiction—counsel, I would have preferred orders more definitive on the standing issue. I guess dismissing over subject matter jurisdiction is basically the same. I had wanted something more definitive but—it will have the same legal operative effect."

We disagree with any implication in the trial judge's statement that dismissing a case for lack of subject matter jurisdiction is "basically the same" as dismissing a case for lack of standing. Although the effect of the dismissal, barring the plaintiff's cause of action, is the same, the issues on appeal are not. Standing is concerned with whether the parties have the right to bring suit. Subject matter jurisdiction is concerned with whether the court has the power to hear a case. Nevertheless, although the court explicitly ruled that it lacked jurisdiction to hear the case, the court implicitly ruled that the Coalition lacked standing to obtain judicial review. Additionally, the parties argued the issue of standing at some length. In view of the court's comments and the interrelatedness of jurisdiction and standing, we will deal with both issues.

On appeal, the Coalition contends:

—It may obtain judicial review of the issuance of the refuse disposal permit under Md.Envt.Code Ann. § 9–263.

—It may obtain judicial review of the issuance of the refuse disposal permit and air management permit under Maryland's Administrative Procedure Act (MAPA).

—It has common law standing to maintain this appeal.

—Maryland courts should adopt the position of federal courts regarding environmental standing.

We disagree. We will, however, vacate the judgment of the circuit court and remand for further proceedings. We explain.

### JUDICIAL REVIEW UNDER § 9–263

■ The Coalition argues that under § 9–263 of the Environmental Law Article it is entitled to obtain judicial review of the issuance of the refuse disposal permit. In relevant part, § 9–263 provides:

"*Any* county, municipality, legally constituted water, sewerage or sanitary district, *institution, or person dissatisfied with any order, rule, or regulation of the Secretary under this subtitle may commence, within 10*

*days after the service of the order, rule, or regulation, an action in the circuit court* for any county *to* vacate and *set aside the order, rule, or regulation* on the ground that the order, rule, or regulation is unlawful or unreasonable, or that the order is not necessary for the protection of the public health or comfort, in which action a copy of the complaint shall be served with the summons." (Emphasis added.)

We agree with the Coalition that § 9–263 establishes three pertinent criteria for judicial review of its action: (1) an institution or person must be dissatisfied (2) with an order, rule or regulation of the Secretary of the Department and (3) the action must commence within 10 days after the service of the order, rule or regulation. We disagree, however, with the Coalition's claim that it meets all three of these criteria. Specifically, we hold that the issuance of a permit is *not* the equivalent of an "order, rule or regulation" as set forth in § 9–263.

The Coalition argues that the issuance of a permit is an order and thus the circuit court has jurisdiction to review the Department's action. Although the Coalition concedes that the statute does not define "order," it maintains that, by implication, *Williamsport v. Washington County Sanitary District*, 247 Md. 326, 231 A.2d 40 (1967), *Jett v. Department of the Environment*, 77 Md.App. 503, 551 A.2d 139 (1989), and *Howard County v. Davidsonville Area Civic Association*, 72 Md.App. 19, 527 A.2d 772, *cert. denied*, 311 Md. 286, 533 A.2d 1308 (1987), have held that the issuance of a permit is an order of the Secretary. We disagree.

In *Williamsport*, the focus of the dispute was a contract between the Town of Williamsport (Town) and the Washington County Sanitary District (District). The Court of Appeals noted that "[t]he facts of the case have all been stipulated." *Williamsport*, 247 Md. at 328, 231 A.2d 40. The Court observed that, despite the Town's request for a hearing before the Department of Health prior to the issuance of the permit, the permit was issued without such a

hearing. The Court noted that the Town appealed the decision of the Department to the circuit court "presumably pursuant to the authority of Maryland Code Article 43, section 404 (1965 Repl.Vol.) [now Md.Envt.Code Ann. § 9–263 (1987)]." *Williamsport*, 247 Md. at 328, 231 A.2d 40.

The circuit court remanded the question of the issuance of the permit to the Department for further consideration. Following the remand, the Town and the District reached an agreement which addressed the Town's concerns. The Town subsequently sought to have the contract declared void. *Williamsport*, 247 Md. at 329–30, 231 A.2d 40. The circuit court ruled that the Town was bound by the contract. *Williamsport*, 247 Md. at 327, 231 A.2d 40. It was this circuit court ruling that was at issue in *Williamsport*.

According to the Coalition, the fact that the Court presumed that the Town's appeal from the Department's original decision was pursuant to Md.Code Ann. Art. 43, § 404 "is a strong indicator of the Court's view that the definition of an 'order' is sufficiently broad to encompass a permit." We disagree. The Court of Appeals simply adopted the parties' presumption. Nor do we agree with the Coalition that it is "highly significant that the Court of Appeals did not indicate any disagreement with the parties' characterization of the basis for the appeal." The basis for appellate review was irrelevant to the issue before the Court in this case. Thus, *Williamsport* has no precedential value regarding the issues in the present case.

*Jett* is equally inapposite to the case at bar. The facts of *Jett* are as follows: Mr. Jett owned a 222–acre Christmas tree farm and had been receiving "stumps and land clearing debris from hauling contractors to fill in low-lying areas of the farm to create level ground to accommodate the growing of trees." *Jett*, 77 Md.App. at 505, 551 A.2d 139. The precursor to the Department, the Maryland Department of Health and Mental Hygiene, then determined that the receipt of the stumps required a permit under Md.Health–Envtl.Code Ann. § 9–210 (1982, 1986 Cum.Supp.) (now Md.

Envt.Code Ann. § 9–204 (1987)). After negotiations, the Department issued a permit for such activity on a 4.53–acre portion of the farm. Thereafter, Jett requested a modification of the permit because the permit limited the hours of operation and the amount of traffic to the landfill. At a hearing held on the matter, Jett's position was that the limitations applied only to the 4.53–acre portion of his farm the permit covered. The Department ruled and the trial court affirmed, however, that the permit applied to the entire farm and restricted disposal operations to the 4.53– acre portion with all the attendant permit restrictions. Jett appealed from this ruling. *Jett,* 77 Md.App. at 505–06, 551 A.2d 139.

Unfortunately, the decision does not address how Mr. Jett obtained circuit court review. Nonetheless, the Coalition contends that, since the Associates' and Jett's permits were issued under the same statutory authority (§ 9–204) and Jett appealed to the circuit court without eliciting any comment from this Court concerning jurisdiction, the circuit court had subject matter jurisdiction. We disagree.

As was the case in *Williamsport,* jurisdiction was not at issue in *Jett.* As both the Department and the Associates observe, Jett, as the applicant for a permit variance, was entitled to, and availed himself of, an adjudicatory hearing. Because Jett was entitled to an adjudicatory hearing, judicial review may have been appropriate under MAPA. *See* text *infra.* This Court's lack of consideration of the jurisdictional issue in *Jett* is not tantamount to approval of the procedure used in that case.

The third case the Coalition cites to support its position that the issuance of a permit is an order for purposes of § 9–263 is *Howard County v. Davidsonville Area Civic Association.* In *Howard County,* the facts clearly state that appellees sought and obtained an adjudicatory hearing on the renewal of a water discharge permit. *Howard County,* 72 Md.App. at 22, 527 A.2d 772. After a hearing, the hearing examiner issued a proposed opinion, finding that the permit should be issued as suggested. Subse-

quently, the agency considered written exceptions and oral argument before issuing a "Final Order" approving the permit. *Howard County,* 72 Md.App. at 22, 527 A.2d 772. The civic association appealed this order to the circuit court. As the Department and the Associates note, however, water discharge permits are regulated under a completely different scheme (now Md.Envt.Code Ann. § 9–322 *et seq.* (1987)), which explicitly includes the opportunity for interested persons to request an adjudicatory hearing after the final determination is published, or, if it is not published, after the public hearing. The request for the adjudicatory hearing must contain a "statement of the specific rights, duties, or privileges of the requestor which are adversely affected by the final determination." The Department may grant or deny the request or limit the issues to be heard at the hearing. The adjudicatory hearing must be conducted in accordance with MAPA procedures. *See* COMAR 26.08.04.-01G(9).

The Coalition's claim that our characterization of the permit in *Howard County* as a final order is equally applicable to the case at bar is mistaken. *Howard County* involved a substantially different factual and legal scenario where jurisdiction, that was clearly proper under both the B Rules and the Maryland Administrative Procedure Act, was not at issue and § 9–263 was not mentioned anywhere in the opinion.

As previously noted, "order," as used in § 9–263, is not defined in the code or case law. Other sources define the word "order" as:

> "An authoritative command (court order). Mandate, decree, direction, dictate, fiat, ukase, instruction, prescription, injunction, pronouncement, demand, rule, commandment, directive, edict, regulation, ultimatum, behest, manifesto, declaration, imperative, ordinance."

*West's Legal Thesaurus/Dictionary,* (Special Deluxe Edition, 1986).

"[A] specific rule, regulation, or authoritative direction: COMMAND."

*Webster's Ninth New Collegiate Dictionary* (1985).

"A mandate; precept; command or direction authoritatively given; rule or regulation.... Direction of a court or judge made or entered in writing, and not included in a judgment."

*Black's Law Dictionary* (5th ed. 1979).

"A command or direction.... The determination of an administrative body or agency."

*Ballentine's Law Dictionary* (3d ed. 1969).

In contrast, these sources define a permit as:

"A document that grants a person the right to do something (work permit). License, authorization, permission, consent, authority, sanction, certification, franchise, patent, commission, approbation, endorsement, carte blanche, leave, ticket, privilege."

*West's Legal Thesaurus/Dictionary*, (Special Deluxe Edition, 1986).

"[A] written warrant or license granted by one having authority."

*Webster's Ninth New Collegiate Dictionary* (1985).

"[A]ny document which grants a person the right to do something. A license or grant of authority to do a thing.... A written license or warrant, issued by a person in authority, empowering the grantee to do some act not forbidden by law, but not allowable without such authority."

*Black's Law Dictionary* (5th ed. 1979).

"A permission granted in writing, such as a building permit. A license."

*Ballentine's Law Dictionary* (3d ed. 1969).

As these sources make clear, an order and a permit are not the same nor does the term "order" include "permit." An order is a command of some authority which cannot be ignored. A permit is merely a grant of authority to do a

specific act. The permittee need not do the specified act, but is allowed to do so. Moreover, the issuance of an order is adjudicatory in nature, while the issuance of a permit is ministerial or administrative in nature. We hold, therefore, that the issuance of a permit is not an order of the Secretary and that § 9–263 does not provide the authority for the Coalition to proceed on appeal.

## JUDICIAL REVIEW UNDER MARYLAND'S ADMINISTRATIVE PROCEDURE ACT

■ The Coalition contends that it is entitled to judicial review of the issuance of the two permits under Maryland's Administrative Procedure Act (MAPA), codified at Md.State Gov't Code Ann. § 10–201 *et seq.* (1984). The section of MAPA which provides for judicial review states:

"A party who is aggrieved by the final decision in a contested case is entitled to judicial review of the decision as provided in this section."

Md.State Gov't Code Ann. § 10–215(a) (1984). According to the Coalition, it fulfills the three criteria necessary to maintain an action: (1) it is a party aggrieved (2) by a final agency decision (3) in a contested case. We disagree and explain.

### —Standing—

■ In order to have standing to appeal to the circuit court from an administrative decision, a person must (1) have been a party to the proceeding before the agency; and (2) be aggrieved by the agency decision. *Maryland–National Capital Park Planning Comm'n v. Friendship Heights*, 57 Md.App. 69, 77, 468 A.2d 1353, *cert. denied*, 300 Md. 89, 475 A.2d 1200 (1984), citing *Bryniarski v. Montgomery County Board of Appeals*, 247 Md. 137, 143, 230 A.2d 289 (1967). The Court of Appeals has held that

"absent a reasonable agency or other regulation providing for a more formal method of becoming a party, anyone clearly identifying himself to the agency for the record as having an interest in the outcome of the matter

being considered by that agency, thereby becomes a party to the proceedings."

*Morris v. Howard Research and Dev. Corp.*, 278 Md. 417, 423, 365 A.2d 34 (1976).

It is undisputed that representatives of the Coalition presented testimony regarding the two permits at eight public hearings or more. Therefore, the Coalition was a party to the proceeding before the Department.

The Coalition brought this appeal in its own name, albeit, on behalf of its members. In order for a person to be aggrieved by an agency decision, that decision must affect a specific interest or property right in a way different from that suffered by the public generally. *Bryniarski*, 247 Md. at 144, 230 A.2d 289. Undoubtedly, The Coalition's members who live in the area surrounding the infectious medical waste incinerator are aggrieved by the Department's issuance of the two permits. In Maryland, however, an association lacks standing to sue where its property interest is not separate and distinct from the interests of its individual members that the challenged action will affect. *See Citizens Planning & Housing Ass'n v. County Executive of Baltimore County*, 273 Md. 333, 345, 329 A.2d 681 (1974), and cases cited therein. The Coalition has not alleged any property interest distinct from its members that the issuance of the two permits would affect. Therefore, the Coalition is without standing to challenge the issuance of the two permits under MAPA.

## COMMON LAW STANDING

■ The Coalition contends that it has standing to maintain this challenge under Maryland common law. It concedes, however, that Maryland has no precedent directly addressing the issue of an environmental association's standing to appeal a State action on behalf of its members. The Coalition correctly points out that, where an individual seeks to redress a public wrong, he or she must suffer some special damage different in kind from that suffered by the

general public. *Kerpelman v. Board of Public Works of Maryland,* 261 Md. 436, 443, 276 A.2d 56, *cert. denied,* 404 U.S. 858, 92 S.Ct. 109, 30 L.Ed.2d 100 (1971); *Rogers v. Maryland–National Capital Park & Planning Comm'n,* 253 Md. 687, 691, 253 A.2d 713 (1969). Under Maryland common law, an association must have a property interest, separate and distinct from that of its individual members, which may be affected by the challenged action in order to have standing to sue. *Citizens Planning,* 273 Md. at 345, 329 A.2d 681. The Coalition argues, without explanation, that, because it is suing on behalf of its members, this rule of law does not apply to this case. We disagree.

If the rule requiring an association to have a separate property interest does not apply to the Coalition, it does not apply to any association. Logically, where an organization does not have a property interest of its own to protect, it would not bring a suit to challenge an action unless the suit were brought on behalf of its members to protect their individual interests. Therefore, we hold that the Coalition lacks standing to challenge the Department's issuance of the two permits under Maryland common law.

## ADOPTION OF THE FEDERAL POSITION ON ENVIRONMENTAL STANDING

■ Finally, the Coalition urges this Court to adopt the law regarding environmental standing as it has developed in the federal courts. Under federal law, in order for an individual to have standing, he must establish three criteria:

"(a) the party who invokes the court's authority must show that he personally has suffered some actual or threatened injury as a result of the allegedly illegal conduct of the defendant[;] he cannot sue for a third party; (b) the injury must be fairly traceable to the challenged action, and (c) be likely to be redressed by a favorable decision of the Court."

*Chesapeake Bay Foundation v. Bethlehem Steel Corp.,* 608 F.Supp. 440, 444 (D.Md.1985), citing *Valley Forge*

*Christian College v. Americans United for Separation of Church and State,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982).

The Supreme Court has held that the actual or threatened injury may be to environmental interests that are "aesthetic, conservational, and recreational." *Sierra Club v. Morton,* 405 U.S. 727, 738, 92 S.Ct. 1361, 1368, 31 L.Ed.2d 636 (1972). Because the Coalition is an association suing on behalf of its members, it must meet additional criteria:

> "An organization may sue on behalf of its members if: (1) its members would otherwise have standing to sue in their own right, (2) the interests the organization seeks to protect are germane to the organization's purpose, and (3) neither the claim asserted, nor the relief requested, requires the participation of individual members in the lawsuit."

*Chesapeake Bay Foundation,* 608 F.Supp. at 445, citing *Hunt v. Washington State Apple Advertising Comm'n,* 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977).

The Coalition may very well meet these criteria. We need not decide this, however, because we decline to adopt the federal position. We explain.

As previously discussed, Maryland's common law regarding the standing of an organization to sue on behalf of its members requires an organization to have a property interest separate from its members. *See Citizens Planning,* 273 Md. at 345, 329 A.2d 681. The federal position is in direct opposition to Maryland's common law position. If we were to adopt the federal position, we would, in effect, overrule cases decided in the Court of Appeals. *E.g. Citizens Planning,* 273 Md. 333, 329 A.2d 681, and cases cited therein. We are neither at liberty, nor inclined to do so.

Additionally, standing under § 9–263 of the Environment Code and under MAPA is statutorily created. We are constrained to interpret statutes as written and in a reasonable manner. We have done so in this case.

### ENVIRONMENTAL STANDING ACT

 We hold that the Coalition does not have standing to sue under § 9–263, MAPA, or Maryland's common law. Be that as it may, the Coalition correctly points out that, where environmental matters are concerned, the Maryland Legislature has recently expressed its intent that a less strict interpretation of standing to sue is appropriate. In 1978, the Maryland General Assembly passed the Environmental Standing Act (ESA), Md.Nat.Res.Code Ann. § 1–502 *et seq.* (1989). The Declaration of Legislative Policy and Intent sets forth the view of the Legislature regarding standing in environmental matters:

"The General Assembly finds and declares that the natural resources and the scenic beauty of the State of Maryland are in danger of irreparable harm occasioned by the use and exploitation of the physical environment. It further finds that improper use and exploitation constitute an invasion of the right of every resident of Maryland to an environment free from pollution to the extent possible. It further finds that the courts of the State of Maryland are an appropriate forum for seeking the protection of the environment and *that an unreasonably strict procedural definition of 'standing to sue' in environmental matters is not in the public interest.*" ESA § 1–502 (emphasis added).

ESA gives standing to bring an action in the courts of equity for mandamus or other equitable relief, including declaratory judgment, to any person. This right does not depend upon whether the person has a special interest distinct from the general population, or whether there is potential personal or property damage. ESA § 1–503(a)(3). A "person" includes residents of Maryland, Maryland corporations, or any partnership, organization or association doing business in the State. ESA § 1–501.[1] A person may

---

1. *Citizens Planning & Housing Association v. County Executive of Baltimore County, supra,* was decided in 1974. ESA was passed in 1978 and effectively exempted cases brought under ESA from the rule

bring suit against any officer or agency of the State or a political subdivision thereof for failure to perform a nondiscretionary ministerial duty imposed under environmental statutes, ordinances or regulations. ESA § 1–503(b). A person may also sue a State officer or agency for failure to enforce an applicable environmental quality standard for the protection of the air, water, or other natural resource. ESA § 1–503(b). If the plaintiff is requesting that governmental action be taken against another individual or organization, the court may join that individual or organization as a defendant after notice is sent to that individual or organization. ESA § 1–503(b).

ESA does not create a substantive new cause of action or theory of recovery and does not allow the recovery of monetary damages. ESA § 1–504(a) and (c). ESA also does not change the law of standing in local zoning matters. ESA § 1–504(e). It specifically allows, however, for "declaratory relief as to whether a permit or order has been lawfully issued or is being violated." ESA § 1–504(c). Equitable relief is not allowed if the condition, activity or failure complained of is in compliance with a lawful, current permit or order of state or federal agency, or an order or other adjudication of a court of competent jurisdiction. ESA § 1–504(f).

The action cannot be compromised, discontinued or dismissed by consent, by default, or for neglect to prosecute without court approval. ESA § 1–507(a). The Maryland Rules of Procedure apply to actions brought under ESA. ESA § 1–507(b). Additionally, a person must exhaust all administrative remedies before pursuing an action under ESA. ESA § 1–504(d).

The action must be brought in the circuit court which has jurisdiction over the location where the condition, activity, or failure is occurring, has occurred or is likely to occur. ESA § 1–505(a). If the plaintiff is not the state, the plain-

---

that an organization must have interests separate and distinct from its members in order to have standing to sue.

tiff must deliver a written notice of the condition, activity, or failure to the agency responsible for initiating or instituting some action as a result of the condition, activity, or failure 30 days prior to commencing the action. ESA § 1–505(b). A copy of this notice must be simultaneously delivered to the Attorney General. ESA § 1–505(b). When the defendants are served, a copy of the summons, complaint and supporting papers and exhibits must be served upon the Attorney General. ESA § 1–505(c). The supporting papers and exhibits must include a copy of the 30–day notice and the signed certified mail receipts returned by the addressee. ESA § 1–505(c). The Attorney General will be permitted to intervene at any time during the pendency of the action. ESA § 1–505(c).

Although this case was not brought specifically under ESA, the Coalition would qualify as a person because it is an organization doing business in Maryland. In the case at bar, the Coalition alleges that the permits were not lawfully issued. The Coalition also implicitly alleges that the Department has failed to enforce air quality standards when it alleges that ozone levels in Hawkins Point exceed the Ambient Air Standards. The Coalition seeks to have the issuance of the permits declared unlawful. Thus, the things complained of in this case are the functional equivalent of the kind of condition, activity or failure that is addressed by ESA. Moreover, the type of relief sought is the type of relief that may be granted under ESA.

The Coalition has also exhausted all administrative remedies available to it. While it is true that the 30–day notice was not sent to the Department or the Attorney General, we believe that neither was disadvantaged by the lack of notice. The Attorney General entered his appearance and represented the Department in this appeal.

The Coalition may well be able to pursue its appeal under ESA. The trial court, however, did not rule on this because the issue was not presented. The Legislature has recently expressed a clear intent that citizens and citizens' organizations be given standing in matters such as the case at bar.

The Legislature has recognized the importance of citizens of this State becoming involved in protecting the environment. It has also recognized that the establishment of organizations and associations represent the only economically viable means of pursuing this involvement. Because of this clear expression of legislative intent, we will remand this case to the Circuit Court for Baltimore City for a determination of whether the Coalition has standing to pursue an appeal under ESA.

JUDGMENT VACATED.

CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

EACH PARTY TO BEAR ITS OWN COSTS.