664 A.2d 382

**CYLBURN ARBORETUM ASSOCIATION, INC.**

v.

**MAYOR AND CITY COUNCIL OF BALTIMORE, et al.**

**No. 1423, Sept. Term, 1994.**

Court of Special Appeals of Maryland.

Sept. 1, 1995.

Walter G. Finch (Ruth Mae Finch, on the brief), Baltimore, for appellant.

Burton H. Levin, Asst. City Sol. of Baltimore City, for appellee, Mayor and City Council.

Jeffrey H. Scherr (Regina M. Dufresne and Kramon & Graham, P.A., on the brief), Baltimore, for appellee, Cylburn Hills, L.L.C.

Argued before BLOOM, WENNER and FISCHER, JJ.

BLOOM, Judge.

This appeal by Cylburn Arboretum Association, Inc. (Association) is from the dismissal, for lack of standing, of its petition for judicial review of a zoning ordinance, Ordinance No. 266, passed by appellee Mayor and City Council of Baltimore, the municipal body corporate of the City of Baltimore (the City), approving the application of appellee Cylburn Hills L.L.C. to establish a Planned Unit Development known as Cylburn Hills.

Appellant's brief lists a triad of issues:

I.    Is appellant an aggrieved party under Art. 66B, § 2.09 of the Maryland Annotated Code?

II.    Does appellant have a personal interest which would be adversely affected by the Planned Unit Development authorized by Baltimore City Ordinance 266?

III.    Does appellant have an interest which is specifically affected in a way different from that suffered by the public generally?

We rephrase those issues as a single question: Did the Circuit Court for Baltimore City err in ruling that the Association was not an aggrieved party under § 2.09 of Art. 66B of the Maryland Code and thus had no standing to challenge the validity of Ordinance No. 266? Our answer to that question being "No," we shall affirm the judgment of the circuit court.

## FACTS

Cylburn, or Cylburn Park, once the residence of a wealthy Baltimore family, was acquired by the City in 1943. The deed conveying Cylburn to the City contains a provision that the property is to be used as a public park.

In 1954, a group of citizens called the Steering Committee drafted a plan to establish a garden center and wild flower preserve in the park and to maintain its facilities. The Baltimore City Board of Recreation and Parks unanimously approved the Steering Committee's proposed plan in December 1954 and authorized the Steering Committee to use those areas of the arboretum that were then available as a garden center and wild flower preserve pursuant to the plan.

In October 1958, the Cylburn Mansion was opened to the public. The Steering Committee, which was renamed the Cylburn Wildflower Preserve and Garden Center, presently maintains an office and a gift shop in the mansion. The mansion is also used to conduct fundraising activities and hold horticulture and nature classes.

The Cylburn Wildflower Preserve and Garden Center was incorporated in December 1970. In August 1982, the Cylburn Wildflower Preserve and Garden Center amended its Articles of Incorporation to rename itself the Cylburn Arboretum Association, Incorporated. Under its Articles of Incorporation, the Association was given "all of the powers conferred by the General laws of the State of Maryland," and is authorized to "preserve and augment the existing natural beauty and facilities of Cylburn Arboretum...."

On 10 March 1970, the Director of the Baltimore City Department of Recreation and Parks, Douglas S. Tawney, sent a letter to the Association's president, advising him as follows:

> I regard our existing relationship as a revocable license to use to our mutual advantage the facilities at Cylburn [Park]. If your organization becomes incorporated and we continue to operate in the same fashion under our revocable license

or verbal understanding, I can see no adverse affects [sic] of incorporation.

Since 1958, the Association, under license from, *i.e.*, with the permission of, the City's Department of Recreation and Parks, has occupied and preserved the Cylburn Mansion, maintained the park's grounds and gardens, installed sprinklers, conducted an annual "Market Day," and planted trees and other vegetation in the park. The Association acknowledges that this permissive use, which is not for any specific term of duration, does not constitute a property right of interest; it is, as the 1970 letter of Mr. Tawney characterized it, a revocable license. The Association contends that, pursuant to that license, it has spent over $440,000 and volunteered "hundreds of thousands of manhours in an effort to preserve, protect and promote the Cylburn Arboretum."

On 8 January 1973, the City, having acquired a tract of land abutting the south boundary of Cylburn Park, approved Ordinance No. 242. Paragraph B.3 of Ordinance 242 established, on that abutting property, a "buffer area," the purpose of which was to protect the park from haphazard development around its borders.

On 27 October 1993, the City, having contracted to sell to Cylburn Hills L.L.C. a substantial part of the buffer property, enacted Ordinance No. 266, which approved the purchaser's application for a zoning change to permit development of the property as a Planned Unit Development (PUD). According to a proposed site plan, some residential units of the PUD would be constructed close to the park's southern boundary.

On 26 November 1993, the Association filed a petition in the Circuit Court for Baltimore City for judicial review of Ordinance 266, alleging that the Ordinance illegally allowed development within the buffer zone created by Ordinance 242. The City moved to dismiss the petition on the grounds that the Association lacked standing under Maryland Code (1957, 1988 Repl.Vol., 1994 Cum.Supp.), Art. 66B, § 2.09. The circuit court granted the motion on 3 March 1994 and dismissed the Association's petition with leave to amend. Appellant subse-

quently filed an amended petition on 16 March 1994, which the City again moved to dismiss on the grounds that appellant lacked standing.

On 12 May 1994, the City enacted Ordinance No. 324, which purported to amend Ordinance 242 in a manner that would eliminate the arguments raised in the Associations's amended petition. On 20 May 1994, the City moved to dismiss the amended petition as moot. After the court granted its motion to intervene in July 1994, Cylburn Hills L.L.C. also moved to dismiss the Association's amended petition, essentially adopting the arguments set forth in the City's motion. In opposition, the Association submitted several exhibits and affidavits to support its claim that it has standing.[1]

Treating appellees' motions to dismiss as motions for summary judgment, the circuit court, in a Memorandum Opinion and Order issued 14 July 1994, denied appellees' motions to dismiss the amended petition as being moot, but granted their motions to dismiss for lack of standing.

## Discussion

The principal question in the case before us is whether the lower court erred in granting summary judgment. A trial court may grant summary judgment when pre-trial documents demonstrate that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Md. Rule 2–501(e). Even assuming that appellant did have a license to use Cylburn Park, none of the facts upon which the lower court based its judgment are in dispute.[2] Thus, in reviewing the grant of summary judgment,

---

1. The court allowed the parties to submit evidence outside the pleadings pursuant to Maryland Rule 2–322(c).

2. In its Memorandum Opinion and Order, the lower court addressed the question of whether the Director of the Maryland Department of Recreation and Parks, Douglas S. Tawney, granted appellant a revocable license in 1970 to use the Park. The court concluded that, even if Tawney did not have the power to grant appellant a license, the circumstances of the case established that the City would be barred by the doctrine of equitable estoppel from denying that appellant holds a

we need only determine "whether the trial court was legally correct." *Beatty v. Trailmaster Prods., Inc.,* 330 Md. 726, 737, 625 A.2d 1005 (1992).

Appellant contends that, as an association,[3] it has standing to challenge the City's zoning action pursuant to Maryland Code (1957, 1988 Repl.Vol., 1994 Cum.Supp.), Art. 66B, § 2.09. Article 66B, § 2.09 provides that "[a]ny person or persons . . . jointly or severally aggrieved by . . . a zoning action by the local legislative body, may appeal the same to the Circuit Court for Baltimore City." In *Bryniarski v. Montgomery County,* 247 Md. 137, 144, 230 A.2d 289 (1967), the Court of Appeals interpreted the meaning of the term "aggrieved" as follows:

> [A] person aggrieved by the decision of a board of zoning appeals is one whose personal or property rights are adversely affected by the decision of the board. The decision must not only affect a matter in which the protestant has a specific interest or property right but his interest therein must be such that he is personally and specially affected in a way different from that suffered by the public generally. *DuBay v. Crane,* 240 Md. 180, 185, 213 A.2d 487 (1965). The circumstances under which this occurs have been determined by the courts on a case by case basis, and the decision in each case rests upon the facts and circumstances of the particular case under review.

The Court further stated that the complainant carries the burden of establishing that he is "aggrieved." *Id.* at 144–45, 230 A.2d 289.

---

revocable license. We shall not address the propriety of the lower court's finding with respect to this issue. For purposes of our analysis in this case, we shall assume that appellant holds a revocable license to use the Park.

**3.** We note that appellant's standing must be based on its personal or property interests as an organization, since such an organization cannot acquire standing to appeal simply because one or more of its members has standing. *Citizens Planning & Housing Ass'n v. County Executive,* 273 Md. 333, 345, 329 A.2d 681 (1974) (citing *Naturopathic Ass'n v. Kloman,* 191 Md. 626, 630, 62 A.2d 538 (1948)).

The Court in *Bryniarski* established a two-prong test that a plaintiff must meet to establish standing to challenge a zoning act. First, the plaintiff must demonstrate that it has a personal or property interest that will be adversely affected by the zoning act. Second, the plaintiff must establish that his personal or property interest will be harmed by the zoning act in a way that is distinct from the harm that the general public will suffer.

### A. *Personal Interest*

■ Appellant, recognizing that a revocable license does not constitute a property interest, *Mayor of Baltimore v. Brack,* 175 Md. 615, 3 A.2d 471 (1939); *Brehm v. Richards,* 152 Md. 126, 136 A. 618 (1927), has not asserted that it satisfies the first prong of the *Bryniarski* test based on a *property* interest derived from its revocable license to use the park. Instead, appellant contends that its revocable license, coupled with the vast amounts of money and labor that it has donated to the park over the years, establishes the *personal* interest contemplated in *Bryniarski.*

The circuit court found appellant's argument to be unpersuasive. According to the lower court, because appellant "has no property rights adversely affected by any of the ordinances, ... the Association cannot prevail" under traditional standing analysis. Citing *Izaak Walton League v. Monroe Co.,* 448 So.2d 1170, 1174 (Fla.Dist.Ct.App.1984); *Miller v. Fulton County,* 258 Ga. 882, 375 S.E.2d 864, 865 (1989); *Clark Oil & Ref. Corp. v. City of Evanston,* 23 Ill.2d 48, 177 N.E.2d 191, 192–93 (1961); and *Walsh v. City of Brewer,* 315 A.2d 200, 207–208 (Me.1974), the court concluded that, although appellant had a license to use and maintain the Park, the license did not give appellant sufficient rights in the property to establish the "personal interest" prong of the *Bryniarski* test.

The circuit court also analogized the case before it to *Maryland–Nat'l Capital Park & Planning Comm'n v. Smith,* 333 Md. 3, 633 A.2d 855 (1993). In that case, the Court of Appeals held that the Maryland–National Capital Park & Planning Commission lacked the requisite "interest" to qualify

it as aggrieved for purposes of standing to appeal the decision of the local zoning board of appeals. According to the Court, the Commission lacked an interest because it "will not suffer any property loss, or be compelled to act based on the Board's decision." *Id.* at 12, 633 A.2d 855. Based on that language, the circuit court concluded that appellant in the present case lacked an interest because

> the City's decision to develop part of the [buffer area], which the Association does not own and which it has not tended, will not impose any duty to act on the Association. Nor will it impose any monetary cost upon the Association. Moreover, no part of the license is limited by Ordinance 266, and so Petitioner will still be able to use and occupy the Park to the same extent. With respect to the time and money already invested by Petitioner, this court cannot say that the Association has not already reaped the benefits from that investment.

We agree with the lower court's decision and its reasoning. Appellant has not cited, nor have we found, any decisions of the Maryland courts supporting its claim that it has a personal interest under the facts of the present case. As for the cases from other jurisdictions cited by appellant, we find them to be distinguishable and unpersuasive.

In support of its position that it has the necessary personal interest, appellant relies on *Douglaston Civic Ass'n v. Galvin,* 36 N.Y.2d 1, 364 N.Y.S.2d 830, 324 N.E.2d 317 (1974) and *Friends of the Pine Bush v. Planning Bd.,* 96 Misc.2d 320, 408 N.Y.S.2d 1016 (N.Y.Sup.Ct.1978), *modified,* 71 A.D.2d 780, 419 N.Y.S.2d 295 (1979). In *Douglaston,* the court found that a neighborhood association had standing to contest the grant of a zoning variance that permitted the construction of a six-story multiple dwelling in its neighborhood, which was zoned for single homes. Initially, the Court stated that an individual homeowner who would be affected by a zoning change

> cannot be expected, nor should he be required, to assume by himself the burden and expense of challenging the zoning change. Even if successful, the aggrieved individual will not be able to recoup his expenditures. By granting neighbor-

hood and civic associations standing in such situations, the expense can be spread over a number of property owners putting them on an economic parity with the developer.

364 N.Y.S.2d at 834–35, 324 N.E.2d at 320. The court then stated that "an appropriate representative association should have standing to assert rights of the individual members of the association where such persons may be affected by a rezoning, variance or an exception determination of a zoning board." *Id.* at 835, 324 N.E.2d at 320.

█ *Douglaston* is distinguishable from the case *sub judice.* The Court of Appeals of New York based its decision on the fact that the proposed zoning change was going to have an affect on the property owned by the individual members of the association. In other words, the court granted standing to the association because its members would have had standing if they had pursued the action individually. In Maryland, however, an organization cannot acquire standing to appeal simply because one or more of its members has standing. *Citizens Planning & Housing Ass'n v. County Executive,* 273 Md. 333, 345, 329 A.2d 681 (1974) (citing *Naturopathic Ass'n v. Kloman,* 191 Md. 626, 630, 62 A.2d 538 (1948)). Moreover, unlike the individual members of the neighborhood association in *Douglaston* who owned property that was going to be affected by the challenged zoning change, appellant's members do not own any property that will be affected by Ordinance 266.

Appellant cites *Friends of the Pine Bush v. Planning Bd.,* 96 Misc.2d 320, 408 N.Y.S.2d 1016, 1018 (N.Y.Sup.Ct.1978), for the proposition that an "interest need not be solely economic; but it may represent aesthetic and environmental values as well." In that case, however, the Supreme Court of New York denied standing to an environmental association challenging the approval of subdivision plats in the Pine Bush area of the City of Albany without even analyzing whether the association had an aesthetic or environmental interest. Thus, the portion of the New York court's opinion dealing with that issue is only dicta.

## B. *Distinct Harm*

Appellant contends that it "will suffer special damages different from the public because [it] is a licensee of the Arboretum and has spent substantial sums and numerous man-hours to protect, preserve and promote the Arboretum." Specifically, appellant argues that it has "a financial stake in the trees, gardens, shrubs and wildlife located at the Cylburn Arboretum as well as its aesthetic interest in the property...." We disagree.

The circuit court found that, even if appellant were able to establish that it has a "personal interest" under the first part of the *Bryniarski* test, appellant did not satisfy its burden of proving that such personal interest will be harmed by the zoning act in a manner distinct from the harm that the general public will suffer. In reaching that conclusion, the circuit court stated as follows:

> At the hearing before this court, Respondents observed that because the Park is a public park open to everyone, Ordinance 266 impacts equally upon the members of the Association as upon all who come to visit the Park. In other words, to whatever extent the construction of the Buffer decreases the property value, creates a visual blight, kills trees, or disturbs the vegetation, that injury does not inure differently to the Association than it does to the public. Petitioner, on the other hand, argues that the zoning change will defeat the substantial funds expended by the Association for the Park and the hours of time devoted by the Association to the Park. Yet Petitioner has failed to demonstrate *how* the zoning changes will injure the Association's interest in that spent money and time. The only obvious consequence of the zoning ordinance affects the Park itself—not the classes, gift shop operations, good will, or any other continuing project that the Association can claim as its own, unique from the interests of the property owner.

In addressing appellant's claim that it has a "financial stake" in the Park's vegetation and wildlife, the circuit court

properly treated the vegetation and wildlife as belonging to the general public as a whole; it did not assume that appellant had any greater financial interest in them than does the general public. Although a licensor who terminates a license may be required to compensate the licensee "for the value of work done by the licensee on the licensor's property which would be of benefit to the licensor," *Zimmerman v. Summers*, 24 Md.App. 100, 124, 330 A.2d 722 (1975), appellee has not terminated, or even modified, appellant's license to use the park.

Also unpersuasive is appellant's claim that, as a licensee, it will be affected differently than the public by the aesthetic damage that will be caused by construction in the buffer zone. Because the park is public, any diminution of its aesthetics will affect the public in the same way that it will affect appellant. The visual impact of, along with any noise or smells caused by, the development in the park's buffer zone will be experienced in the same manner by anyone who visits the park, regardless of whether the visitor is a member of the Association or simply a member of the general public.

We conclude that appellant has failed to establish that it has a personal interest that will be adversely affected by Ordinance 266 in a manner that is different than the harm that the general public will suffer. Accordingly, we hold that the circuit court properly found that appellant was not an "aggrieved party" under Maryland Code (1957, 1988 Repl.Vol., 1994 Cum.Supp.), Art. 66B, § 2.09. Because we affirm the judgment of the circuit court on the standing issue, we need not address the court's denial of appellees' motion to dismiss appellant's action as moot.

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**