CARROLL PARK MANOR COMMUNITY ASSOCIA-
TION, INC. ET AL. *v.* BOARD OF COUNTY
COMMISSIONERS OF FREDERICK
COUNTY, MARYLAND ET AL.

[No. 402, September Term, 1981.]

*Decided December 7, 1981.*

The cause was argued before LOWE, MASON and
MACDANIEL, JJ.

*David D. Freishtat,* with whom were *Shulman, Rogers,
Gandal, Tobin & Ecker, P.A.* on the brief, for appellants.

*Lawrence E. Speelman, County Attorney for Frederick County,* for appellees.

LOWE, J., delivered the opinion of the Court.

Four individual citizens and taxpayers of Frederick County and an incorporated association of homeowners in the vicinity of property known as the Montevue Tract in that County have appealed from an order holding that they had no standing to obtain a declaratory judgment and injunction in the Circuit Court for Frederick County that would have restricted the use of that tract "for the benefit of the Poor of said County and to and for no other use, intent or purpose, whatsoever." The property in question was obtained by the County in 1828 by a deed reciting the limiting language above quoted. The Bill of Complaint, filed against the County Commissioners and the Attorney General of Maryland, claims that the present and prospective uses of the Montevue Tract violate the terms of the deed, which appellants contend created a charitable trust.

The appellees raised the question of standing (among others) by Motion Raising Preliminary Objection. Because appellants had averred that the property was held as a charitable trust, appellees argued that no such trust existed, but even if it did, that appellants did not fall within the "person interested" description in Md. Cts. & Jud. Proc. Code Ann. (1974, 1980 Repl. Vol.), § 3-408, setting forth those persons who may have a declaration of rights or legal relations in respect to a trust.

The chancellor assumed for the purposes of the Motion that the deed had created a charitable trust and, thus assuming, held that appellants did *not* have standing to sue:

> "It is the settled general rule that a mere member of the general public, though a taxpayer, has no standing in court to maintain a suit to enforce a charitable trust or to prevent violations of a charitable trust. *15 Am Jur.2d. Charities Sec.* 142, *14 CJS, Charities Sec.* 58, *Anno:* 62, *ALR* 902, *124 ALR* 1242, *94 ALR 3rd* 1204, *Cannon v. Stephens,*

18 Del. Chancery, 159A 234, *Pollack v. Peterson,* 271 A2d 45, *Kania v. Chatham,* 297 N.C. 290, 254 S.E.2d 528. See also *Estates and Trusts, Annotated Code of Maryland,* Sec. 14, 301. The Court has not been directed to any case in Maryland in which persons were held to have standing to enforce a charitable trust simply because they were taxpayers, nor has the Court found any such cases in its own research. Plaintiffs have not shown that they are persons interested in the enforcement of the trust created by the deed to the Montevue Tract, even if such a trust was created by it, apart from being taxpayers of Frederick County. See citations, *supra.* See also Sec. 3-408, *Courts & Judicial Proceedings Article, Annotated Code of Maryland,* and Sec. 14-301 of the *Estates and Trusts Article, Annotated Code of Maryland.* See also the definition of an "interested person" in Sec. 1-101 of the *Estates and Trust Article, supra.* Therefore, they have no standing to sue or maintain this action, citations, *supra.*"

It appears that the chancellor too narrowly viewed the issue before him. As we read the Bill of Complaint, appellants do not seek "to enforce a charitable trust" in the sense that it was addressed by the authorities upon which the judge relied. It appears rather that they seek, as "taxpayers and citizens of Frederick County," to enjoin allegedly ultra vires acts by the County authorities.

"Board of County Commissioners of Frederick County have acted illegally and been arbitrary and capricious in their actions relating to the Montevue Tract to continue to use said property for the uses in violation of their trust as established in the deed of the Montevue Tract to the County in 1828."

Whereupon, they pray specifically three types of relief from the court. First, they ask for a declaration of the rights of the parties "as well as all citizens with respect to the Montevue

Tract." Based upon the foregoing allegation that the deed had created a charitable trust, we infer that the prayer asked for just such a declaration. Secondly, they asked the court to enjoin the County Commissioners from "the development of the Montevue Tract for a Central Alarm or any other facility not consistent with the Deed." This was the imminent concern which precipitated the action as indicated in the recitations of the Bill of Complaint:

> "The Board of County Commissioners and its action on December 9, 1980 voted to designate the Montevue Tract, which is owned by Frederick County, as a site for the Central Alarm (the public facility for the receipt of all emergency phone calls) and to also retain the use of the property for the following purpose. The public works office building for Frederick County, automobile equipment and storage yard, storage facility for voting machines, state veterinarian office and incinerator for the disposal of animals. There is no present intention of the County Commissioners to cease the use of the property for these purposes."

Thirdly, they prayed not that they be permitted to enforce the trust by preventing violations of it, but

> "[t]hat the State Attorney General take such steps to continue the charitable trust and protect the Montevue Tract."

That prayer was in accord with a previous recitation in the Bill explaining why the Attorney General had been made a party.

> "Stehpen [sic] H. Sachs is the attorney general for the State of Maryland. In that capacity he is being sued in the above-captioned matter pursuant to Section 14-302 in the Trusts and Estates Articles. The Attorney General is charged by law to oversee chartiable [sic] trusts and see that they, as nearly as

possible, fulfill the general charitable intention of a settlor or testator." [1]

The question then is not whether appellants had standing to enforce a charitable trust but whether, as citizen-taxpayers, they might invoke the aid of an equity court to restrain the action of public officials from illegal or ultra vires acts. The enforcement of the trust was the *means* of restraint they ultimately sought through the Attorney General, as required by law. Parenthetically, we note that the Attorney General's response indicated that he was not knowledgeable enough to admit or deny the allegations and

---

1. Md. Est. & Trusts Code Ann. (1974) provides:

"§ 14-301. General enforcement.

(a) *Power of court.* — Courts of equity have full jurisdiction to enforce trusts for charitable purposes upon suit of the state by the Attorney General or suit of any person having an interest in enforcement of the trust.

(b) *Definition.* — 'Charitable purposes' includes all purposes within either the spirit or letter of the statute of 43 Elizabeth ch. 4 (1601), commonly known as the statute of charitable uses.

(c) *Beneficiaries as an indefinite class.* — A charitable trust shall not be held invalid or unenforceable merely because the beneficiaries of the trust constitute an indefinite class. . . .

§ 14-302. Uniform Charitable Trusts Administration Act.

(a) *General rule.* — If a trust for charity is or becomes illegal, or impossible or impracticable of enforcement or if a devise or bequest for charity, at the time it was intended to become effective, is illegal, or impossible or impracticable of enforcement, and if the settlor or testator manifested a general intention to devote the property to charity, a court of equity, on application of any trustee, or any interested person, or the Attorney General of the State, may order an administration of the trust, devise or bequest as nearly as possible to fulfill the general charitable intention of the settlor or testator.

(b) *Uniformity of construction.* — This section shall be interpreted and construed to effectuate its general purpose to make uniform the law of those states which enact it.

(c) *Short title.* — This section may be cited as the Maryland Uniform Charitable Trusts Administration Act."

agreed to be bound by whatever determination the court deemed just and proper regarding the administration of the alleged trust. His cooperative disinterest continues in his failure to participate in this appeal.

In *Citizens P. & H. Ass'n v. County Exec.,* 273 Md. 333 (1974), the Court of Appeals — in its contemplative capacity — reviewed all of its earlier cases on taxpayer standing to sue, beginning with *Baltimore v. Gill,* 31 Md. 375 (1869). The Court condensed its prior holdings into concise and carefully articulated rules.

> "From this decision [*Baltimore v. Gill, supra*] and the long line of Maryland cases following in its wake, the principle has become established that a taxpayer may invoke the aid of a court of equity to restrain the action of a public official or an administrative agency when such action is illegal or *ultra vires,* and may injuriously affect the taxpayer's rights and property. [Citations omitted.] The corollary to this rule is that the taxpayer will be allowed such relief only when some special damage is alleged and proved, or a special interest is shown which is distinct from that of the general public. [Citations omitted.] This has been interpreted to require a showing that the action being challenged results in a pecuniary loss or an increase in taxes." 273 Md. at 339.

In the case before us, the appellants have alleged that they were taxpayers and citizens invoking the aid of an equity court to avert ultra vires actions by public officials. They have not alleged, however, that which is a required showing,

> "that the action being challenged results in a pecuniary loss or an increase in taxes," *id.,*

to them as taxpayers.

> "The Plaintiffs are taxpayers and citizens of Frederick County, all owning the property within Frederick County and paying taxes to Frederick

County thereon and has [sic] standing to bring the action as taxpayers, and the decision to use the portion of the Montevue Tract for the uses sited [sic] herein would thus reduce and eliminate a portion of the County's assets to be used for the poor."

That which they have alleged — a reduction or elimination of assets to be used for the poor — indicates to the contrary, that the revenue not used for the poor might inure to the taxpayers' benefit. *Cf. Citizens Committee v. Co. Comm.,* 233 Md. 398, 404 (1964) (taxpayers had no standing to challenge local laws authorizing gambling where licensing revenue derived by county exceeded costs of administration); *see Citizens P. & H. Ass'n, supra* at 342. It clearly did not indicate a pecuniary loss and that is the test according to the Court of Appeals:

"The test is whether appellants reasonably *may* sustain a pecuniary loss or a tax increase . . . ." *Id.* at 344.

Appellants contend in their brief, however, that:

"Clearly, pecuniary damage to the taxpayers would result if it were necessary to increase taxes to purchase other sites on which to build facilities for the poor when such purchases would be unnecessary if the County used the Montevue Tract which it already owns."

But although the possibility of such pecuniary loss is their present contention, that is not what appellants allege in their Bill of Complaint. Their allegations clearly imply a concern only that the poor will be deprived. They allege no facts indicative of the argued fears that substitute sites will be sought and purchased to the pecuniary detriment of taxpayers. If such *facts* were alleged showing that appellants *may* sustain a pecuniary loss or a tax increase, appellants' standing would be assured and the controversy would be justiciable. See *Gordon v. City of Baltimore,* 258 Md. 682, 689-690 (1970).

We hasten to note, however, that organizational appellant, although not distinguished from its individual colleagues in the allegation that "plaintiffs are taxpayers and citizens", can have no standing to sue where it has no property interest of its own, separate and distinct from that of its individual members, which may be affected by any of the alleged acts under attack. 273 Md. at 345. Unless the allegations suggest that the organizational appellant possessed such separate interests, it would have no standing despite a pecuniary loss or tax increase allegation by the individual appellants.

Had the chancellor not been misdirected by the charitable trust enforcement issue, we are certain he would have permitted an appropriate opportunity to amend, in light of the liberal amendment policy in this State. Amendments should be freely allowed to serve the ends of justice so that cases may be tried upon their merits rather than upon the niceties of pleadings. *Crowe v. Houseworth,* 272 Md. 485 (1974); *Hall v. Barlow Corporation,* 255 Md. 28, 39-40 (1969).

We will, therefore, remand the case to the Circuit Court for Frederick County in order for the chancellor to provide an adequate opportunity to amend the Bill of Complaint in accordance with our opinion, if there are facts known to appellants permitting them to so allege. If no facts are alleged within the time established by the chancellor, sufficient to show that appellants in their respective capacities "reasonably *may* sustain a pecuniary loss or a tax increase," *Citizens P. & H. Ass'n, supra,* the Bill of Complaint should be dismissed by the chancellor.

> *Judgment reversed; case remanded for further proceedings not inconsistent with this opinion; costs to be paid by Frederick County.*