964 A.2d 662

**120 WEST FAYETTE STREET, LLLP**

v.

**MAYOR AND CITY COUNCIL OF BALTIMORE et al.**

**No. 49 Sept.Term, 2008.**

Court of Appeals of Maryland.

Feb. 9, 2009.

254

M. Albert Figinski (Paul D. Raschke of Law Offices of Peter G. Angelos, Baltimore), on brief, for appellant.

David E. Ralph (George A. Nilson and William R. Phelan, Jr., Charles S. Hirsch and Mark Pollak of Ballard Spahr Andrews & Ingersoll, LLP, Baltimore), on brief; Brian L. Moffet (Catherine A. Bledsoe of Gordon, Feinblatt, Rothman, Hoffberger & Hollander, LLC., Baltimore), on brief, for appellees.

ARGUED BEFORE BELL, C.J., HARRELL, GREENE, MURPHY, ADKINS, BARBERA, and JOHN C. ELDRIDGE (Retired, Specially Assigned), JJ.

GREENE, Judge.

120 West Fayette Street LLP, et al. ("120 West Fayette"), seeking a declaratory judgment, filed a complaint in the Circuit Court for Baltimore City against the Mayor and City Council of Baltimore et al. ("the City"). The complaint alleged that the City violated its Charter and laws by entering into an illegal Land Disposition Agreement ("LDA") with an entity seeking to purchase and develop an area in Baltimore's westside, known as the "Superblock." The City made a motion to dismiss the complaint and the Circuit Court granted that motion. We shall hold that the Circuit Court erred in concluding that 120 West Fayette lacked standing and erred in failing to render a declaratory judgment. We shall also hold that the Circuit Court did not comply with Maryland Rule 2–322 in treating the City's motion to dismiss as a motion for summary judgment. The Circuit Court did not provide all parties a reasonable opportunity to present material pertinent to the summary judgment motion.

## I.

In 1999, the Baltimore City Council enacted an urban renewal plan [1] for the westside of downtown Baltimore. The

---

**1.** The Baltimore City Code defines an "urban renewal plan" as a plan "for the elimination, correction, or the prevention of the development

renewal plan, known as the "Market Center Urban Renewal Plan," has been advertised as Baltimore's largest urban renewal plan since the plan to revitalize the city's Inner Harbor. To implement the plan, the Baltimore Board of Estimates ("BOE") delegated "ministerial and administrative" functions to a nonprofit corporation known as the Baltimore Development Corporation, Inc. ("BDC"). The City asserts that it instructed the BDC to "work with developers and interested groups regarding the development of the westside, prepare and issue requests for development proposals, arrange and attend meetings between developers and business owners, and coordinate financial assistance."

On October 27, 2003, the BDC issued a Request for Proposals ("RFP") that invited developers to submit proposals for developing the "Superblock." The "Superblock" encompasses five blocks and is bound by Fayette Street, Howard Street, Lexington Street, Clay Street, and Park Avenue. The RFP provided for use of an Exclusive Negotiating Privilege ("ENP") that would aid the City to "[set] out specific requirements and deadlines for fulfilling said requirements of [the] RFP." Four entities, including Next Generation Chera, LLC ("Next Generation"), responded to the RFP and on June 24, 2005, the BDC offered an ENP to an affiliate of Next Generation, known as Lexington Square Partners, LLC ("Lexington Square"). Ultimately, the City and Lexington Square entered into a LDA, that provided for the sale and subsequent development of the "Superblock."

120 West Fayette is an entity that pays taxes in Baltimore City. It is located adjacent to the "Superblock." As a taxpayer and neighboring landowner, 120 West Fayette filed a declaratory judgment action against the City to challenge the

---

or the spread of slums, blight, or deterioration in an entire Renewal Area or a portion thereof." Art. 13 ("Housing and Urban Renewal"), § 2.5(b)(1). A "Renewal Area" is defined as an "area within the boundary lines of the City of Baltimore which may be benefitted through the exercise of functions and powers vested in the Department of Housing and Community Development...." Baltimore City Code, Art. 13, § 2.4(a)(1).

validity of the LDA on the basis that it is illegal and ultra vires. The gist of 120 West Fayette's complaint was that the City, and its agent, the BDC, unlawfully violated and manipulated the RFP process, in violation of the City's Charter and laws, to award the LDA to a favored developer. As previously noted, the City made a motion to dismiss 120 West Fayette's complaint, and the Circuit Court granted the City's motion.

In a "Memorandum and Opinion accompanying its Order Granting [the City's] Motion to Dismiss ("Memorandum and Opinion")," the Circuit Court concluded that it was appropriate to dismiss the complaint because, 120 West Fayette "failed to establish standing as a taxpayer plaintiff and failed to establish an actual or potential pecuniary loss, increase of taxes, special damages, the City's illegal expenditure of public funds or ultra vires acts in the selection of a developer for the Superblock." The Circuit Court also made the following conclusions based upon the pleadings and facts presented:

1) There is no expenditure of public funds in connection with the development of the Superblock, 2) the Defendant City acted according to the City's Code in authorizing the BDC to act on its behalf, 3) the Superblock is not a public work subject to the competitive bidding process outlined in the City's Charter, and 4) the Defendant City did not engage in any illegal or ultra vires acts in the LDA or ENP.

120 West Fayette filed a timely appeal to the Court of Special Appeals, but before that court could consider the case, we issued a writ of certiorari, *120 West Fayette v. Baltimore,* 405 Md. 290, 950 A.2d 828 (2008).[2] For the reasons stated herein,

---

2. The certiorari petition presents the following questions for review:

1. Does Petitioner [120 West Fayette], a taxpayer located across the street from a vast, costly renewal project, have standing to challenge the legality of the project?

2. When the renewal project was wholly negotiated behind closed doors over a 38 month period by Baltimore Development Corporation so that a RFP for redevelopment of the so-called Superblock was transformed by materially changing the **area** for renewal by a development entity **different** from the original bidder, did the City violate the City Charter provisions dealing with procurement of

we shall reverse the judgment of the Circuit Court for Baltimore City.

## II.

As a preliminary matter, we shall consider whether the Circuit Court treated the City's motion to dismiss as a motion for summary judgment. 120 West Fayette contends that the Circuit Court relied on facts outside of the pleadings to arrive at the conclusions set forth in its Memorandum and Opinion accompanying the order granting the City's motion to dismiss. 120 West Fayette asserts that, in relying on matters outside of the pleadings, the Circuit Court converted the City's motion to dismiss into a motion for summary judgment. 120 West Fayette further asserts that the court violated Maryland Rule 2–322 because the court failed to provide 120 West Fayette the opportunity it was entitled to under Maryland Rule 2–501. The City counters that all of the Circuit Court's conclusions were supported by 120 West Fayette's complaint and attached exhibits.

■■ When considering a motion to dismiss, a trial court is required to assume the truth of all of the well-pled facts in the complaint and attached exhibits, and the "reasonable inferences drawn from them, in a light most favorable to the nonmoving party." *Converge v. Curran,* 383 Md. 462, 475, 860 A.2d 871, 878 (2004). Maryland Rule 2–322(c) provides in part:

> If, on a motion to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 2–501, and all parties

public works, and skirt legislatively prescribed provisions for urban renewal, so that the disposition was illegal and ultra vires?

3. Just how far can Defendants [the City] range beyond the Complaint's well-pled facts when they merely file jointly a Motion to Dismiss?

(emphasis in original).

shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 2–501.

 The record reveals that the Circuit Court did rely on matters outside of the pleadings when granting the City's motion to dismiss. In its Memorandum and Opinion, the Circuit Court concluded that the City had made "no expenditure of public funds in connection with the development of the Superblock." The Court stated:

Upon reviewing the pleadings and facts, this Court finds that the property subject to the LDA is not a public work and was a disposition of property that did not require competitive bidding as a result of the expansion of the project. Competitive bidding is not necessary because there is no expenditure of public funds (See Plaintiffs Affidavit 4B, Paul Rashke), and the Superblock is not a public work that requires competitive bidding.

In the above statement, the Circuit Court cites the affidavit of 120 West Fayette's Attorney, Paul Rashke, to support its conclusion that the City had made no expenditure of public funds. Mr. Rashke's affidavit, however, was not a part of the pleadings and yet, was considered by the court when granting the order of dismissal.[3] *See Converge*, 383 Md. at 475, 860 A.2d at 879 (noting that "the universe of facts" pertinent to a motion to dismiss "are limited generally to the four corners of the complaint and its incorporated exhibits, if any"); *Green v. H & R Block*, 355 Md. 488, 501, 735 A.2d 1039, 1046 (1999) ("The granting of a motion to dismiss ... depends solely on the adequacy of plaintiff's complaint."); *see also Young v. Medlantic Lab.*, 125 Md.App. 299, 303, 725 A.2d 572, 574

---

**3.** Moreover, the affidavit does not stand for the proposition for which the court cites it. The affidavit simply asserts that "[t]hough styled as a Motion to Dismiss, [the City's] motion adverts to numerous factual matters for which [120 West Fayette] will need discovery to fully respond" and that the City's assertion that "it is not spending money related to the Westside Development and LDA" is "peculiarly within [the City's] knowledge." The affidavit in no way alleges that the City's assertions are undisputed.

(1999) ("It is clearly inappropriate in the context of a motion to dismiss for the judge to make a finding of fact.").

By relying on material outside of the pleadings when granting the City's motion to dismiss, the Circuit Court, in effect, converted the motion to dismiss into a motion for summary judgment. *See Converge*, 383 Md. at 476, 860 A.2d at 879 ("Because the Circuit Court ... did not state, in its order of dismissal or otherwise, that, in granting the [Defendant's] motion to dismiss, it did not consider the factual allegations and exhibits beyond those in [Plaintiff's] complaint, the default provision established by the pertinent Rules and our cases interpreting them dictate that we review the action as the grant of summary judgment."); *Dual v. Lockheed Martin*, 383 Md. 151, 161, 857 A.2d 1095, 1100 (2004) (holding that a defendant's motion to dismiss amounted to a motion for summary judgment when the record revealed that the trial court "considered factual matters, placed before it by the parties, beyond those alleged in the complaint or amended complaint"). Although such conversion is permissible under Maryland Rule 2–322, the court failed to abide by that Rule's requirement that the court provide all parties "reasonable opportunity to present all material made pertinent" to a motion for summary judgment. *See Antigua v. Melba Investors*, 307 Md. 700, 719, 517 A.2d 75, 85 (1986) (noting that when a court considers matters outside of the pleadings and thus converts a motion to dismiss into a motion for summary judgment, the court must "give [p]laintiffs a reasonable opportunity to present, in a form suitable for consideration on summary judgment, *additional* pertinent material") (emphasis added).

■■■ 120 West Fayette maintains that the facts necessary to oppose the City's motion were unavailable absent the opportunity to engage in discovery, largely due to the non-public procedures engaged in by the City and the BDC.[4] 120 West Fayette urges that in order to present additional perti-

---

4. For background on the relationship between BDC and the City, *see Baltimore Development v. Carmel Realty*, 395 Md. 299, 308–14, 910 A.2d 406, 411–15 (2006).

nent material below, it needed, but was denied, an opportunity to engage in discovery regarding:

(1) the nature of the BDC's authority, (2) the basis for [the City's] assertion that plans for the development 'always envisioned a site for parking,'(3) the precise financial commitments undertaken by the City, (4) any and all efforts to include or exclude the public and adjoining property owners from the process, (5) any legal justification for the use of the ... ENP, (6) the BDC–City connections including all contracts between BDC and the City, and all City appropriations to BDC, and (7) the BDC–City connections including the evolution of entities favored for the development.

Because the Circuit Court failed to provide 120 West Fayette an opportunity to present material pertinent to a ruling on a summary judgment motion, the court erred as a matter of law. *Cf. Johnson v. RAC Corp.*, 491 F.2d 510, 514 (4th Cir.1974) (observing that when a motions court relies on matters outside of the pleadings to convert a motion to dismiss into a motion for summary judgment, the court must provide the plaintiff the opportunity "to employ discovery, in order to counter ... facts in the defendant's affidavit or to establish a factual basis for his action against the defendant").[5] Thus, it appears that the only way the Circuit Court could determine that the City made no improper expenditure of public money in this case was to draw inferences in favor of the City. To do so was inappropriate. It is settled that summary judgment is appropriate when there is no genuine dispute of material fact and a party is entitled to judgment as a matter of law. *Hill v. Cross Country*, 402 Md. 281, 294, 936 A.2d 343, 350–51 (2007). As to our appellate review, we consider the same material as the Circuit Court and view the facts in the light most favorable to the plaintiff, not the moving party. *See, e.g., Myers v. Kayhoe*, 391 Md. 188, 203, 892 A.2d 520, 529 (2006) (noting that

---

5. Maryland's summary judgment rule is similar to its federal counterpart and this Court has held that interpretations of the federal rule are persuasive when interpreting Maryland's rule. *Metropolitan Mtg. Fd. v. Basiliko*, 288 Md. 25, 27, 415 A.2d 582, 583 (1980).

when reviewing a grant of summary judgment under Maryland Rule 2–501, "[w]e review the record in the light most favorable to the nonmoving party and construe any reasonable inferences that may be drawn from the facts against the moving party.").

## III.

120 West Fayette also contends that the Circuit Court nonetheless erred by dismissing its complaint for other reasons not implicated by our analysis in Part II of this decision. 120 West Fayette posits that it enjoys standing both as a taxpayer and as an owner of property that is situated in proximity to the "Superblock." In support of its contention that it has taxpayer standing, 120 West Fayette asserts that its complaint satisfied the standards established by Maryland precedent. Particularly, 120 West Fayette maintains that to establish standing under Maryland law, a taxpayer need only assert that a municipality or public official engaged in illegal or ultra vires acts and that such acts pose potential pecuniary damage or a tax increase to the taxpayer. 120 West Fayette urges that it alleged facts sufficient to satisfy this standard.

By contrast, the City contends that the Circuit Court correctly granted its motion to dismiss. The City alleges that 120 West Fayette lacks standing to challenge its LDA agreement because 120 West Fayette failed to allege an unlawful expenditure by the City that may reasonably result in a pecuniary loss or tax increase to 120 West Fayette. The City argues that while Maryland law provides for broad taxpayer standing, "courts have not hesitated to dismiss suits for lack of standing where, as here, the plaintiffs fail to allege any special interest or loss, different in kind from that of the general public, or where the allegations of the complaint indicate that the challenged action will not result in any increase to the plaintiff's taxes." Additionally, the City alleges that it has done nothing illegal and will make money by selling the properties that comprise the "Superblock." The City reasons that if it is making money by conveying the properties that

comprise the "Superblock," its actions will decrease rather than increase taxpayer burden.

 Maryland law liberally permits taxpayers to bring claims challenging alleged illegal or ultra vires acts of government officials. *Boitnott v. Baltimore*, 356 Md. 226, 234, 738 A.2d 881, 885 (1999); *see also State v. Burning Tree Club, Inc.*, 315 Md. 254, 291, 554 A.2d 366, 385 (1989) ("Under Maryland law, the doctrine of taxpayer standing is not as narrowly limited as it is under the law of some jurisdictions."); *Citizens P & H Ass'n v. County Exec.*, 273 Md. 333, 338, 329 A.2d 681, 684 (1974) ("In this State, the courts have always maintained with jealous vigilance the restraints and limitations imposed by law upon the exercise of power by municipal and other corporations . . . .") (quoting *Baltimore v. Gill*, 31 Md. 375, 394–95 (1869)); *Baltimore County v. Churchill, Ltd.*, 271 Md. 1, 5, 313 A.2d 829, 832 (1974)("[W]here the issues presented are of great public interest and concern, the interest necessary to sustain standing need only be slight.") (citations omitted). There remain, however, essential requirements that a taxpayer's claim must satisfy in order to establish standing. In *Inlet Associates v. Assateague House*, 313 Md. 413, 440–41, 545 A.2d 1296, 1310 (1988), we explained:

> The law of Maryland on standing to sue is well articulated. . . . [A] taxpayer may invoke the aid of a court of equity to restrain the action of a public official, which is illegal or ultra vires and may injuriously affect the taxpayer's rights and property. The taxpayer will be allowed such relief, however, only when some special damage is alleged and proved, or a special interest is shown distinct from that of the general public. This, . . . "requires a showing that the action being challenged results in a pecuniary loss or an increase in taxes." We have recognized, however, that the extent to which a taxpayer is capable of detailing the damage anticipated from an illegal and ultra vires act may be rather limited at the time the suit is initially filed. Thus, we [have] held that the taxpayer plaintiff is not required to allege facts which *necessarily* lead to the conclusion that taxes will be increased; rather, the test is whether the

taxpayer "reasonably *may* sustain a pecuniary loss or a tax increase"—"whether there has been a showing of *potential* pecuniary damage."

(citations omitted).

■ It is thus clear that in order to establish taxpayer standing in Maryland, a taxpayer must allege two things: 1) an action by a municipal corporation or public official that is illegal or ultra vires, and 2) that the action may injuriously affect the taxpayer's property, meaning that it reasonably may result in a pecuniary loss to the taxpayer or an increase in taxes. *Id.*; *see also Medical Waste v. Maryland Waste*, 327 Md. 596, 613, 612 A.2d 241, 250 n. 10 (1992) ("[A] person's or an organization's status as a taxpayer entitles it to standing when the challenged statute, regulation, or government action increases or threatens to increase the taxpayer's tax burden."). Our case law illustrates how standing is achieved when these requisite allegations are made. For example, in *Boitnott v. Baltimore*, 356 Md. at 226, 738 A.2d at 885, we determined that Baltimore taxpayers had standing to challenge an ordinance that amended the urban renewal plan pertaining to Baltimore's Inner Harbor East based upon the taxpayers' allegations that the ordinance violated the City's Charter and that the City had spent 20 million dollars in developing the Inner Harbor East area prior to the litigation.

Our holding in *Citizens P & H Ass'n*, 273 Md. at 335, 329 A.2d at 682, is also illustrative. In that case, taxpayers and property owners in Baltimore County alleged that the County sought to illegally reorganize the County Office of Planning and Zoning ("the Office"). The taxpayers then asserted that the proposed reorganization could injure their property rights to the extent that, if the endeavor failed, the Office would operate inefficiently and the inefficiency could thereby result in a tax increase or cause their property to decrease in value. *Citizens P & H Ass'n*, 273 Md. at 335–36, 329 A.2d at 683. The trial court granted the County's motion to dismiss the taxpayers' complaint for lack of standing, concluding that the taxpayers' allegations of injury were "mere conclusions, based

on conjecture and speculation, without any supporting factual foundation." *Citizens P & H Ass'n*, 273 Md. at 336, 329 A.2d at 683. This Court reversed, holding that although the taxpayers could have particularized their allegations in more detail, the allegations remained sufficient to demonstrate that the taxpayers reasonably might sustain a pecuniary loss or tax increase as a result of the County's allegedly illegal actions. *Citizens P & H Ass'n*, 273 Md. at 344–45, 329 A.2d at 687.

In our view, the allegations contained in 120 West Fayette's complaint are also sufficient to establish taxpayer standing as a matter of law. Like the taxpayers in *Boitnott* and *Citizens P & H Ass'n*, 120 West Fayette pled that a municipality had engaged in illegal and ultra vires acts that could potentially cause 120 West Fayette pecuniary harm or an increase in taxes. 120 West Fayette's complaint specifically alleges that the LDA agreement is "in derogation of the Charter and laws of the City." To support this contention, the complaint includes several assertions, such as: the LDA is a public works project that was illegally "massaged outside the requisite bidding process" provided in Art. VI § 11 of the Baltimore City Charter; that the LDA "differ[s] markedly" and illegally from the RFP in that it "alter[s] and enlarge[s] the [area subject to the LDA] significantly beyond what the RFP specifically identified" and grants rights to a party who did not respond to the RFP or execute the ENP; and that use of the ENP is illegal and "a concept foreign to the City Charter or City Code."

The complaint also alleges that the City's illegal or ultra vires actions may injure 120 West Fayette as a taxpayer. Specifically, it states: "[The] BDC receives more than $2 million from the City annually and the putative LDA calls for the City's taxpayers to foot more than $21 million for acquisition of properties for disposition and additional millions to bankroll relocation and the proposed undefined mixed uses to be developed." Further, it alleges that the City offered to deduct up to $10 million from the sale price of the "Superblock" if Lexington Square agreed to improve the "Super-

block" properties by performing public works on or near them. The complaint indicates that this potential deduction can amount to a $10 million expenditure of public funds.

Because 120 West Fayette's complaint alleged that the City engaged in illegal and ultra vires acts and that such acts may potentially cause 120 West Fayette pecuniary harm or an increase in taxes, we hold that the allegations were sufficient to establish taxpayer standing as a matter of law.[6] We therefore hold that the Circuit Court's conclusion to the contrary, was in error.

## IV.

120 West Fayette also asserts that it has standing to bring its claim against the City because its property is located adjacent to the Superblock. It argues that the redevelopment of the properties that comprise the Superblock will cause 120 West Fayette to "endure demolition and interminable chaos at its doorsteps." 120 West Fayette points out that the City's redevelopment plan indicates that 120 West Fayette will be linked to the Superblock, and that it will be directly impacted by the "unspecified redevelopment" and the City's "foot-drag-

---

6. The City presents no authority which leads us to a converse conclusion. The City relies primarily on *Kerpelman v. Bd. of Public Works*, 261 Md. 436, 276 A.2d 56 (1971); *Stovall v. Secretary of State*, 252 Md. 258, 250 A.2d 107 (1969); and *Carroll Pk. v. Board, Frederick Co.*, 50 Md.App. 319, 437 A.2d 689 (Md.App.1981). These cases merely echo the aforementioned requirement that, to establish standing, a taxpayer must allege an unlawful or illegal action that may reasonably result in a pecuniary loss or a tax increase. In *Kerpelman*, the Court held that a taxpayer lacked standing because the taxpayer's complaint did not allege any pecuniary injury or potential increase in taxes. 261 Md. at 443, 276 A.2d at 60. Similarly, in *Stovall*, we determined that taxpayers' claim failed for lack of standing because the taxpayers did not attempt to allege an "illegal expenditure of tax-derived funds resulting in either pecuniary loss to them or an increase in their taxes." 252 Md. at 262, 250 A.2d at 109. *Carroll Park* stands for the same proposition. In that case, the intermediate appellate court concluded that taxpayers lacked standing because their complaint included only allegations that demonstrated concern for the poor and did not allege that the taxpayers may sustain a pecuniary loss or tax increase. *Carroll Park*, 50 Md.App. at 325, 437 A.2d at 693.

ging." Further, 120 West Fayette directs this Court's attention to case law, which, according to 120 West Fayette, instructs that a neighboring property owner has standing to challenge the validity of zoning ordinances that impact property located nearby that of the property owner.

The City rejects 120 West Fayette's assertions and posits that 120 West Fayette cannot bring suit based upon its status as an adjacent property owner. The City contends that 120 West Fayette has failed to allege that its property will be harmed or damaged by the LDA. Moreover, the City asserts than any allegation that 120 West Fayette could potentially make regarding future damage that it may endure due to the proposed conveyance is purely speculative.

Alternatively, we hold that 120 West Fayette's allegations that it owned property affected by the redevelopment and located in close proximity to the Superblock constitutes sufficient standing to maintain this action in court. As to standing, the question is "whether the interest sought to be protected by the complainant is *arguably* within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *News American v. State*, 294 Md. 30, 40, 447 A.2d 1264, 1269 (1982) (quoting *Ass'n of Data Processing Service Org., Inc. v. Camp*, 397 U.S. 150, 153, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970)); *see also Adams v. Manown*, 328 Md. 463, 480, 615 A.2d 611, 619 (1992) (noting that standing refers to the entitlement "to invoke the judicial process in a particular instance").

Under Maryland common law principles "if an individual ... is seeking to redress a public wrong ... [that individual] 'has no standing in court unless [the individual] has also suffered some kind of special damage from such wrong differing in character and kind from that suffered by the general public.'" *Medical Waste*, 327 Md. at 613, 612 A.2d at 249 (*see* cases cited therein). This common law requirement of personal and specific damage or "aggrievement" is embodied in

Maryland's statutory Zoning laws.[7] *See* Md.Code (1957, 1978 Repl.Vol.), Article 66B § 2.09(a)[8] (relating to appeals to courts); *Maryland–Nat'l v. Smith,* 333 Md. 3, 11–12, 633 A.2d 855, 859 (1993); *Medical Waste,* 327 Md. at 611 n. 9, 612 A.2d at 248–49 n. 9. Generally, one is deemed "aggrieved" if he, she, or it can demonstrate that the land use decision will adversely affect his, her, or its interest, and that such interest is personal or specific, and not shared by the general public. *Bryniarski v. Montgomery Co.,* 247 Md. 137, 144, 230 A.2d 289, 294 (1967).

 Moreover, "[i]n actions for judicial review of administrative land use decisions 'an adjoining, confronting or nearby property owner is deemed, *prima facie* . . . a person aggrieved.'" *Sugarloaf v. Dept. of Environment,* 344 Md. 271, 297, 686 A.2d 605, 618 (1996). The person or entity challenging the fact of aggrievement has the burden of denying such damage in his or her answer . . . and of coming forward with evidence to rebut the presumption of aggrievement. *Sugarloaf,* 344 Md. at 297, 686 A.2d at 618 (citations omitted); *Bryniarski,* 247 Md. at 146–47, 230 A.2d at 294 (holding that landowners whose properties were "contiguous or close in proximity" to a proposed hotel had standing to challenge in court the grant of a special exception); *see also Marcus v. Montgomery County,* 235 Md. 535, 538, 201 A.2d 777, 779 (1964) ("[T]he text writers and the cases in this jurisdiction and other jurisdictions are in general agreement that an adjacent owner—in the sense of being near or close

---

**7.** Zoning and land use provisions are not completely "synonymous and co-terminous," but they are closely related, as "zoning is a form of land use regulation." *Master Royalties v. Balto. City,* 235 Md. 74, 92, 200 A.2d 652, 661 (1964).

**8.** Art. 66B § 2.09(a) provides: Any person or persons, or any taxpayer or any officer, department, board, bureau of the jurisdiction, jointly or severally aggrieved by any decision of the board of appeals, or by a zoning action by the local legislative body, may appeal the same to the Circuit Court for Baltimore City. Such appeals shall be taken in accordance with Title 7, Chapter 200 of the Maryland Rules. Nothing in this subsection shall change the existing standards for review of any zoning action.

by—as well as an abutting owner, whose legal rights have been infringed, is an aggrieved person.") (quoting *Pattison v. Corby*, 226 Md. 97, 102, 172 A.2d 490, 493 (1961)). Such property owners are granted prima facie aggrieved status due to the sheer proximity of their property to the area that is the subject of the complaint. *See Sugarloaf*, 344 Md. at 298–99, 686 A.2d at 618–19 (holding that owners of a farm adjacent to the tract containing a solid waste incinerator were entitled to prima facie aggrieved status by virtue of their proximity to the incinerator and thus, had standing to bring an action for judicial review challenging the issuance of permits); *Md.-Nat'l Cap. P. & P. v. Rockville*, 269 Md. 240, 248, 305 A.2d 122, 127 (1973) (noting that entities that did not "own property within sight or sound of the subject property [had] no special interest or damage to give either of them the status of an aggrieved party . . . ."); *25th Street v. Baltimore*, 137 Md.App. 60, 86, 767 A.2d 906, 920 (2001) (noting that "to be considered an aggrieved party, the complaining property owner must be in 'sight or sound' range" of the subject property).

 Because "land use . . . is at least one of the prime considerations with which an urban renewal plan is reasonably sure to be concerned," *Master Royalties v. Balto. City*, 235 Md. 74, 92, 200 A.2d 652, 661 (1964), we conclude that the principles that confer standing upon an adjoining, confronting or neighboring property owner to seek judicial review of land use decisions, logically extend to an adjoining, confronting or neighboring property owner that is challenging a municipalities' allegedly illegal avoidance of urban renewal and procurement ordinances. *Cf. Schweig v. City of St. Louis*, 569 S.W.2d 215 (Mo.App.1978) (reasoning that since nearby property owners have standing to challenge zoning ordinances, nearby property owners also had standing to challenge the legality of a municipal redevelopment project since the owners could have suffered harm if the project was mismanaged or not completed). 120 West Fayette's property is located in close proximity to the urban renewal area and is adjacent to the properties that comprise the Superblock. By virtue of its location, 120 West Fayette will be linked to such properties.

Because, 120 West Fayette has alleged that it will be able to both see and hear the allegedly illegal redevelopment of these properties from its doorsteps, it follows that 120 West Fayette will be directly impacted by and has a direct interest in the redevelopment.[9]

The City provided no persuasive evidence or argument indicating that 120 West would not be impacted. Thus, we conclude that the Circuit Court also erred in its determination that 120 West Fayette lacked property owner standing. The facts alleged by 120 West Fayette support its standing to bring its claim by virtue of its status as a property owner adjacent to the Superblock.

## V.

Because the Circuit Court erred in granting the City's motion to dismiss on the basis that 120 West Fayette lacked standing, we conclude that it also erred in failing to provide a declaratory judgment pursuant to 120 West Fayette's request. This Court has consistently reiterated that, "[w]hen a declaratory judgment action is brought, and the controversy is appropriate for resolution by declaratory judgment, the trial court must render a declaratory judgment." *Union United Methodist v. Burton,* 404 Md. 542, 550, 948 A.2d 1, 6 (2008) (quoting *Harford Mutual v. Woodfin,* 344 Md. 399, 414–15, 687 A.2d 652, 659 (1997)). We have explained that "whether a declaratory action is decided for or against the plaintiff, there should be a declaration in the judgment or decree defining the rights of the parties under the issues made." *Bowen v. City of Annapolis,* 402 Md. 587, 608, 937

---

**9.** 120 West Fayette's exact allegations are that "[i]t will endure the demolition and interminable chaos at is doorsteps, be directly impacted by the City's foot-dragging, and be a neighbor to an unspecified redevelopment." 120 West also expresses the concern that, due to its location near the Superblock redevelopment site, its interest will be harmed if the redevelopment is not completed for a long time or at all. It states: "If the past is a prologue, [120 West Fayette] will be subjected to yet more delay while the redevelopment originally promised by the City in 2000 fails to materialize."

A.2d 242, 254 (2007) (quoting *Case v. Comptroller,* 219 Md. 282, 288, 149 A.2d 6, 9 (1959)). The matter before us was appropriate for resolution by declaratory judgment. *See Secure Financial v. Popular Leasing,* 391 Md. 274, 280–81, 892 A.2d 571, 575 (2006) (noting that a justiciable controversy is a pre-requisite to a declaratory judgment). The Circuit Court's failure to render such a declaration was error.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY REVERSED. CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEE.**

HARRELL, J. joins in the judgment and parts I, II, III and V only.