ADKINS, J.,
dissenting, which BATTAGLIA and McDonald, jj., join.
Respectfully, I dissent. Contrary to the Majority, I would hold that the property owner standing doctrine (“proximity standing”) applied in Bryniarski and Ray is appropriate when a protestant challenges legislative comprehensive zoning. Use of this doctrine will protect landowners who are specially aggrieved by a zoning change and will not unduly burden either local governments or the courts. It is more consistent with our recent case law than the standard adopted by the Majority — taxpayer standing. The latter doctrine, applicable to challenges to governmental expenditures of taxpayer dollars, is unsuitable to address governmental land use decisions.
In its attempt to disavow a trend towards broad use of proximity standing, the Majority re-interprets our decisions in *587 Superblock I,[1] Superblock III,[2] and State Center,[3] imposing a new, more circumscribed reading than is justified.
In Superblock I, we applied proximity standing because the protestants were challenging land use decisions. We reasoned that “[bjecause land use ... is at least one of the prime considerations with which an urban renewal plan is reasonably sure to be concerned, ... the principles that confer standing upon an adjoining, confronting or neighboring property owner to seek judicial review of land use decisions, logically extend to an adjoining, confronting or neighboring property owner that is challenging a municipalit[y’s] allegedly illegal avoidance of urban renewal and procurement ordinances.” Superblock I, 407 Md. 253, 272, 964 A.2d 662, 673 (2009) (first ellipses in original) (emphasis added) (internal citations omitted). The Court did not ground its decision on the administrative nature of the land use decision approving the Land Disposition Agreement. See id. at 273, 964 A.2d at 673 (“The facts alleged by 120 West Fayette support its standing to bring its claim by virtue of its status as a property owner adjacent to the Superblock.”). The Majority’s claim that Superblock I stands for the proposition that proximity standing is limited to challenges to a decision by an administrative, executive, or quasi-judicial body is simply not supported by the language of the opinion.
In Superblock III, this Court adopted a broad definition of “land use decision”: any ordinance or regulation “enacted or promulgated by a legislative or administrative body for the purpose of directing the development of real estate.” 426 Md. 14, 30, 43 A.3d 355, 365 (2012) (citation omitted); see id. at 31, 43 A.3d at 365 (providing the following examples of “land use *588 decisions”: ordinances, variances, reclassifications, special exceptions, permits, and licenses). Recently, in State Center, we again endorsed that broad definition. 488 Md. 451, 525, 92 A.3d 400, 444 (2014) (Harrell, J.) (concluding that “although not traditional land use regulations or ordinances,” the formative contracts for the State Center Project were land use decisions because they “govern the development of real estate”). Because we held in Superblock I that proximity standing applies to challenges to land use decisions,[4] and we confirmed in Superblock III and State Center that “land use decisions” are any decisions directing or governing the development of real estate, I deduce that proximity standing is not limited to administrative land use decisions, but also applies to legislative land use decisions like comprehensive zoning.
The Majority relies heavily on a “floodgates” rationale, arguing that because Bill 12-11 encompassed the entirety of Councilmanic Districts I and TV, applying proximity standing to challenges to Bill 12-11 would arguably permit every property owner in these Districts to gain standing. The Majority hypothesizes as follows:
This could mean, practically speaking, that the owners of 59,045 parcels or lots in Councilmanic Districts I and IV, along with other property owners located adjoining, confronting, or nearby the external boundaries of those Districts, as well as other property owners located between 200 to 1000 feet from the borders of the Districts (so long as they allege additional “plus factors”) may all have standing to challenge Bill 12-11. Hypothetically, thousands of plaintiffs with the benefit of property owner standing could have standing to challenge comprehensive zoning legislation.
*589 Maj. Op. at 570-71, 113 A.3d at 658 (emphasis in original). This projection is simply hyperbole. Only those property owners living in very close proximity to the 260 parcels that underwent zoning changes under Bill 12-11 could have standing to challenge the comprehensive rezoning. This entire “floodgates” reasoning is unsound.
Indeed, existing law already provides a dam against flooding. The Bryniarski[5] special aggrievement standard, as further explicated in Ray,[6] will effectively limit the class of plaintiffs entitled to judicial relief. All property owners must demonstrate special aggrievement in order to gain standing to challenge a land use decision like a legislative comprehensive rezoning. Ray v. Mayor of Balt., 430 Md. 74, 77, 59 A.3d 545, 547 (2013) (“As we have explained, to have standing to challenge a zoning reclassification, a person’s property interest ‘must be such that he is personally and specially affected in a way different from that suffered by the public generally.’ ” (quoting Bryniarski v. Montgomery Cnty. Bd. of Appeals, 247 Md. 137, 144, 230 A.2d 289, 294 (1967))). Contrary to the Majority’s view, proximity standing does not eviscerate the special aggrievement requirement, but rather allows protestants to demonstrate special aggrievement based on their proximity and other “plus factors.” See id. at 85, 59 A.3d at 551-52 (the prima facie and almost prima facie aggrievement standards are based on special aggrievement).
In Ray, we concluded that “proximity is the most important factor to be considered” when determining whether a protestant has been specially aggrieved. Id. at 82-83, 59 A.3d at 550. The importance of proximity to special aggrievement does not recede simply because a local government enacts a comprehensive rezoning ordinance. In this case, one of the Citizens, Rosie Shorter, owns property that adjoins or confronts property that Bill 12-11 rezoned from open space, rural *590 agricultural, or low-density residential classifications to mixed-use residential. Banks, grocery stores, nursing homes, restaurants, taverns, office buildings, and health clubs are all permitted in zones classified mixed-use residential. See Anne Arundel Cnty. Code § 18-8-301 (b). The mechanism for a change in zoning classification of a property should not eliminate the presumption that Ms. Shorter is prima facie aggrieved based on her proximity to land now subject to a far more intensive use. See Ray, 430 Md. at 81, 59 A.3d at 549 (“ ‘An adjoining, confronting or nearby property owner is deemed, prima facie, to be specially damaged and, therefore, a person aggrieved.’ ” (quoting Bryniarski, 247 Md. at 145, 230 A.2d at 294)).
There is no reason to think that most comprehensive rezonings, which are adopted by elected officials, will be so offensive to property owners that, as the Majority projects, thousands (or even hundreds) of them will pursue judicial relief. See Maj. Op. at 570-71, 113 A.3d at 658. Surely, the costs of conducting such a lawsuit, together with the dismal prospects for success on the merits, will be unpalatable to most.
Even with standing secured, property owners face a precipitous up-hill battle to win a declaration that a comprehensive rezoning ordinance is invalid. We have long recognized that comprehensive rezoning ordinances are entitled to a strong presumption of correctness. See, e.g., Howard Cnty., Md. v. Dorsey, 292 Md. 351, 355, 438 A.2d 1339, 1342 (1982) (“This Court has repeatedly recognized that there is a strong presumption of the correctness of ... comprehensive rezoning, and that ‘strong evidence’ of error is required to overcome that presumption.” (citation omitted)). According Respondents standing would not change the substantive law.
As we said in Anderson House, LLC v. Mayor & City Council of Rockville:
Zoning decisions which are made during a comprehensive rezoning process are strongly presumed to be correct. *591 Comprehensive rezoning is a vital legislative function, and in making zoning decisions during the comprehensive rezoning process, a [zoning authority] is exercising what has been described as its ‘plenary’ legislative power.
402 Md. 689, 723, 939 A.2d 116, 136 (2008) (alteration in original) (citation and internal quotation marks omitted). We elaborated on the strength of the presumption of correctness:
Indisputably, [the challenger] carries the heavy burden of establishing, by clear and affirmative evidence, that [the Ordinance] is invalid. Even where reasonable doubt exists, the Ordinance must be sustained. “In other words, the legislature is presumed to have acted within [its police powers] so that if any state of facts reasonably can be conceived that would sustain [the Ordinance], the existence of that state of facts as a basis for the passage of the [regulation] must be assumed.”
Id. at 724, 939 A.2d at 137 (citations and footnotes omitted); see also Dorsey, 292 Md. at 355, 438 A.2d at 1342 (“ ‘While, in recent years, we have had occasion to enunciate a number of important principles applicable to the law of zoning, perhaps none is more rudimentary than the strong presumption of the correctness of original zoning and of comprehensive rezoning.’ ” (citation omitted)). Applying proximity standing to comprehensive rezoning would not jettison this strong presumption of correctness.
Even if declaratory judgment actions do modestly increase, that cost is justified by the need to provide a judicial means to challenge an illegal legislative action injurious to a property interest.[7] See City of Balt. v. Gill, 31 Md. 375, 395 (1869) (“In this State the courts have always maintained with jealous vigilance the restraints and limitations imposed by law upon *592 the exercise of power by municipal and other corporations; and have not hesitated to exercise their rightful jurisdiction for the purpose of restraining them within the limits of their lawful authority, and of protecting the citizen from the consequence of their unauthorized or illegal acts.”).
The Majority holds that “[t]he doctrine of taxpayer standing — already available to some complainants challenging administrative land use decisions — is the appropriate standing doctrine that complainants challenging comprehensive zoning legislation must satisfy.” Maj. Op. at 575, 113 A.3d at 661. This doctrine, however, provides a more theoretical than real remedy because as I explain below, its availability is severely limited.
With taxpayer standing “there must be a ‘nexus’ between the showing of potential pecuniary damage and the challenged act.” Maj. Op. at 579,113 A.3d at 663 (citing State Center, 438 Md. at 572-80, 92 A.3d at 472-77). In State Center, we recently explained the nexus requirement, indicating that “the challenged act must affect potentially a tax that the taxpayer-plaintiff pays.” 438 Md. at 572, 92 A.3d at 472. We also concluded that a thorough review of our precedent “reveals that the taxpayer must be asserting a challenge and seeking a remedy that, if granted, would alleviate the tax burden on that individual and others; otherwise, standing does not exist.” Id. (emphasis added) (footnote omitted). We then went on to demonstrate that “[mjany cases emphasize that standing cannot exist if the remedy sought would not decrease the taxpayer’s monetary burden.” Id. at 573, 92 A.3d at 472 (emphasis added); see, e.g., Citizens Comm. of Anne Arundel Cnty. Inc. v. Cnty. Comm’rs of Anne Arundel Cnty., 233 Md. 398, 197 A.2d 108 (1964) (plaintiffs challenging laws authorizing licensed gambling failed to satisfy taxpayer standing because the remedy they sought, if granted, would not decrease their monetary burden as taxpayers); Kerpelman v. Bd. of Pub. Works of Md., 261 Md. 436, 276 A.2d 56 (1971) (plaintiff challenging conveyances of state land failed to allege taxpayer standing because she did not allege that the remedy she sought would decrease her monetary burden). These cases reveal the paucity of the taxpayer standing remedy offered by *593 the Majority. The inadequacy of that remedy is a compelling reason to extend to comprehensive rezonings our longstanding jurisprudence that property owners with sufficient proximity can challenge zoning changes.
In this case, several Respondents produced affidavits stating that their property values will decrease as a result of Bill 12-11. They cannot achieve taxpayer standing because, with reduced property values, their taxes will not increase. They would have proximity standing because they live no more than 1000 feet from the rezoned parcel, and we have concluded that a depreciated property value is a “plus factor” supporting special aggrievement. See Habliston v. City of Salisbury, 258 Md. 350, 352, 354-55, 265 A.2d 885, 885-87 (1970) (protestant was specially aggrieved based on proximity and lay testimony of decreasing property value); Chatham Corp. v. Beltram, 252 Md. 578, 579-80, 584, 251 A.2d 1, 2, 4 (1969) (same).
We have long held that protestants who are specially aggrieved have standing to challenge land use decisions. See, e.g., Cassel v. Mayor of Balt., 195 Md. 348, 353, 73 A.2d 486, 487-88 (1950) (“It is an established rule that a court of equity has the power to restrain the enforcement of a void statute or ordinance at the suit of a person injuriously affected.”); Bryniarski, 247 Md. at 144, 230 A.2d at 294 (protestant has standing to challenge a zoning action if “he is personally and specially affected in a way different from that suffered by the public generally”); Ray, 430 Md. at 77-78, 59 A.3d at 547 (a protestant has standing to challenge a land use decision if he satisfies the special aggrievement test articulated in Bryniarski). The prima facie and almost prima facie aggrievement standards — the two principal components of proximity standing — both predicate standing on special aggrievement. See Bryniarski, 247 Md. at 143-44, 230 A.2d at 294; Ray, 430 Md. at 85, 59 A.3d at 551-52. Thus, applying proximity standing to challenges to legislative comprehensive rezoning ensures that all protestants who are specially aggrieved by such rezoning have standing to challenge it in the courts.
*594 Finally, we have accorded standing to owners whose property classifications were changed as a part of a legislative comprehensive rezoning. See Maj. Op. at 580-81, 113 A.3d at 664; see, e.g., Anderson House, 402 Md. at 706, 939 A.2d at 126 (“Anderson House is entitled to have the Circuit Court consider its claims as to Ordinance 7-03 because the C-T zone created by that legislation was applied to the Anderson House property through Ordinance 21-05. Thus, its rights were affected and the Circuit Court had jurisdiction to review the challenge to its enactment.”); Cnty. Comm’rs of Queen Anne’s Cnty. v. Miles, 246 Md. 355, 364, 228 A.2d 450, 454 (1967) (protestants had standing to challenge a comprehensive rezoning ordinance because they alleged that “the resale value of [their property], for development purposes, [was] decreased by its zoning [re]classification”). The Majority recognizes that these owners can challenge a comprehensive rezoning, but ignores the patent inequity of denying standing to their closest neighbors.
In conclusion, I would hold that proximity standing is the appropriate basis upon which a judicial challenge to a comprehensive zoning legislative action may be maintained. This conclusion is the one most consistent with our precedent, and it ensures that all property owners who are specially aggrieved by an act of legislative comprehensive rezoning have a means to challenge it in the courts.
Judge BATTAGLIA and Judge McDONALD authorize me to state that they join in the views expressed in this opinion.

. 120 W. Fayette St., LLLP v. Mayor of Balt., 407 Md. 253, 964 A.2d 662 (2009).

. 120 W. Fayette St., LLLP v. Mayor of Balt., 426 Md. 14, 43 A.3d 355 (2012).

. State Center, LLC v. Lexington Charles Ltd. P’ship, 438 Md. 451, 92 A.3d 400 (2004).

. See Superblock I, 407 Md. at 272, 964 A.2d at 673 ("Because land use ... is at least one of the prime considerations with which an urban renewal plan is reasonably sure to be concerned, ... the principles that confer standing upon an adjoining, confronting or neighboring property owner to seek judicial review of land use decisions, logically extend to an adjoining, confronting or neighboring property owner that is challenging a municipalit[y’s] allegedly illegal avoidance of urban renewal and procurement ordinances.” (first ellipses in original) (emphasis added) (internal citations omitted)).

. Bryniarski v. Montgomery Cnty. Bd. of Appeals, 247 Md. 137, 230 A.2d 289 (1967).

. Ray v. Mayor of Balt., 430 Md. 74, 59 A.3d 545 (2013).

. Of course, a properly owner may challenge a comprehensive rezoning without resorting to the courts by petitioning the ordinance to referendum. See Anne Arundel Cnty. Charter, § 308. For an individual property owner to challenge a comprehensive zoning ordinance through the referendum power, however, he would have to obtain signatures from “ten per centum of the qualified voters of the County!.] ” Id. This presents a formidable and costly challenge.